## ADAMS *v.* TEXAS

No. 79–5175.   Argued March 24, 1980—Decided June 25, 1980

White, J., delivered the opinion of the Court, in which Brennan, Stewart, Blackmun, Powell, and Stevens, JJ., joined. Brennan, J., filed a concurring opinion, *post*, p. 51. Burger, C. J., concurred in the judgment. Marshall, J., filed an opinion concurring in the judgment, *post*, p. 51. Rehnquist, J., filed a dissenting opinion, *post*, p. 52.

*Melvyn Carson Bruder* argued the cause for petitioner. With him on the brief were *J. Stephen Cooper* and *George A. Preston*.

*Douglas M. Becker,* Assistant Attorney General of Texas, argued the cause for respondent. With him on the brief were *Mark White,* Attorney General, *John W. Fainter, Jr.,* First Assistant Attorney General, *Ted L. Hartley,* Executive Assistant Attorney General, and *W. Barton Boling,* Assistant Attorney General.*

MR. JUSTICE WHITE delivered the opinion of the Court.

This capital case presents the question whether Texas contravened the Sixth and Fourteenth Amendments as construed and applied in *Witherspoon v. Illinois,* 391 U. S. 510 (1968), when it excluded members of the venire from jury service because they were unable to take an oath that the mandatory penalty of death or imprisonment for life would not "affect [their] deliberations on any issue of fact." We hold that there were exclusions that were inconsistent with *Witherspoon,* and we therefore reverse the sentence of death imposed on the petitioner.

I

Trials for capital offenses in Texas are conducted in a two-phase proceeding. See Tex. Code Crim. Proc. Ann., Art. 37.071 (Vernon Supp. 1979). In the first phase, the jury considers the question of the defendant's guilt or innocence. If the jury finds the defendant guilty of a capital offense, the trial court holds a separate sentencing proceeding at which a wide range of additional evidence in mitigation or aggravation is admissible. The jury is then required to answer the following questions based on evidence adduced during either phase of the trial:

> "(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and

---

*\*Jack Greenberg, James M. Nabrit III, Joel Berger, John Charles Boger,* and *Anthony G. Amsterdam* filed a brief for the NAACP Legal Defense and Educational Fund, Inc., as *amicus curiae* urging reversal.

with the reasonable expectation that the death of the deceased or another would result;

"(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

"(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased." Art. 37.071 (b).

If the jury finds beyond a reasonable doubt that the answer to each of these questions is "Yes," the court is required to impose a sentence of death. If the jury finds that the answer to any of the three questions is "No," the court imposes a sentence of life imprisonment. Arts. 37.071 (c), (e).

The petitioner in this case was charged with the capital offense of murdering a peace officer.[1] During *voir dire* examination of individual prospective jurors, the prosecutor, and sometimes the trial judge, intensively inquired as to whether

---

[1] Under Tex. Penal Code Ann. § 19.03 (a)(1) (1974), whoever "murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman" is guilty of a capital felony. Texas also authorizes the death penalty for four other offenses: murder committed in the course of kidnaping, burglary, robbery, forcible rape, or arson; murder committed for remuneration; murder committed while escaping or attempting to escape from a penal institution; and murder of a prison employee by a prison inmate. § 19.03.

Under the current Texas capital punishment scheme, the jury's discretion over sentencing is limited both by § 19.03, which authorizes the death penalty for only a small class of aggravated crimes, and by Tex. Code Crim. Proc. Ann., Art. 37.071 (Vernon Supp. 1979), which mandates a sentence of death if, but only if, the jury answers "Yes" to each of the statutory penalty questions. This system was adopted in response to the Court's judgment in *Branch* v. *Texas*, decided together with *Furman* v. *Georgia*, 408 U. S. 238 (1972), which struck down a statute giving the jury absolute discretion whether to impose the death penalty or not. The Court upheld the revised Texas capital punishment scheme in *Jurek* v. *Texas*, 428 U. S. 262 (1976).

their attitudes about the death penalty permitted them to take the oath set forth in Tex. Penal Code Ann. § 12.31 (b) (1974). Section 12.31 (b) provides as follows:

> "Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact."

Typically, the prospective juror was first advised that the State was seeking the death penalty and asked to state his general views on the subject, which were sometimes explored in considerable depth. He was then informed in detail of the special procedure used by Texas in capital cases, including in particular the fact that "Yes" answers to the three punishment questions would automatically result in the trial judge's imposing the death sentence. Finally, he was asked whether he could state under oath, as required by § 12.31 (b), that the mandatory penalty of death or imprisonment for life would not affect his deliberations on any issue of fact. On the State's submission and over petitioner's objections, the trial judge excused a number of prospective jurors who were unwilling or unable to take the § 12.31 (b) oath.

The jury selected under this procedure convicted the petitioner of the charged offense and answered the statutory questions affirmatively at the punishment phase, thus causing the trial judge to impose the death sentence as required by Art. 37.071 (e). On appeal, the petitioner argued that prospective jurors had been excluded in violation of this Court's decision in *Witherspoon* v. *Illinois, supra.* The Texas Court of Criminal Appeals rejected the contention on the authority of its previous cases, which had "consistently held that the statutory scheme for the selection of jurors in capital cases in Texas, and in particular the application of [§ 12.31 (b)] to the punishment issues, comports with the constitutional require-

ments of *Witherspoon*." 577 S. W. 2d 717, 728 (1979). We granted the petition for a writ of certiorari, 444 U. S. 990 (1979), limited to the following questions:

"(1) Is the doctrine of *Witherspoon* v. *Illinois,* 391 U. S. 510, applicable to the bifurcated procedure employed by Texas in capital cases? (2) If so, did the exclusion from jury service in the present case of prospective jurors pursuant to Texas Penal Code § 12.31 (b) violate the doctrine of *Witherspoon* v. *Illinois, supra?*" [2]

## II

### A

*Witherspoon* involved a state procedure for selecting juries in capital cases, where the jury did the sentencing and had complete discretion as to whether the death penalty should be imposed. In this context, the Court held that a State may not constitutionally execute a death sentence imposed by a jury culled of all those who revealed during *voir dire* examination that they had conscientious scruples against or were otherwise opposed to capital punishment. The State was held to have no valid interest in such a broad-based rule of exclusion, since "[a] man who opposes the death penalty, no less than one who favors it, can make the discretionary judgment entrusted to him . . . and can thus obey the oath he takes as a juror." *Witherspoon* v. *Illinois,* 391 U. S., at 519. The defendant, on the other hand, was seriously prejudiced by the State's practice. The jury which sentenced him to death fell "woefully short of that impartiality to which the petitioner was entitled" on the issue of punishment, *id.,* at 518. By excluding all those who opposed capital punishment, the

---

[2] In *Burns* v. *Estelle,* 592 F. 2d 1297 (1979), a panel of the Court of Appeals for the Fifth Circuit found that the application of Tex. Penal Code Ann. § 12.31 (b) (1974) to the facts of that case violated *Witherspoon.* The en banc Fifth Circuit has since set the case for rehearing en banc. 598 F. 2d 1016 (1979). The court held oral argument on January 8, 1980, but has as yet issued no decision.

State "crossed the line of neutrality" and "produced a jury uncommonly willing to condemn a man to die." *Id.*, at 520, 521.

The Court recognized that the State might well have power to exclude jurors on grounds more narrowly drawn:

> "[N]othing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.*" *Id.*, at 522–523, n. 21 (emphasis in original).

This statement seems clearly designed to accommodate the State's legitimate interest in obtaining jurors who could follow their instructions and obey their oaths. For example, a juror would no doubt violate his oath if he were not impartial on the question of guilt. Similarly, the Illinois law in effect at the time *Witherspoon* was decided required the jury at least to *consider* the death penalty, although it accorded the jury absolute discretion as to whether or not to impose it. A juror wholly unable even to consider imposing the death penalty, no matter what the facts of a given case, would clearly be unable to follow the law of Illinois in assessing punishment.

In *Boulden* v. *Holman*, 394 U. S. 478, 483–484 (1969), we again emphasized the State's legitimate interest in obtaining jurors able to follow the law:

> "[I]t is entirely possible that a person who has a 'fixed opinion against' or who does not 'believe in' capital punishment might nevertheless be perfectly able as a juror to abide by existing law—to follow conscientiously the in-

structions of a trial judge and to consider fairly the imposition of the death sentence in a particular case."

And in *Lockett* v. *Ohio,* 438 U. S. 586, 595–596 (1978), we upheld against a *Witherspoon* challenge the exclusion of several jurors who were unable to respond affirmatively to the following question:

"[D]o you feel that you could take an oath to well and truely [*sic*] try this case . . . and follow the law, or is your conviction so strong that you cannot take an oath, knowing that a possibility exists in regard to capital punishment?"

This line of cases establishes the general proposition that a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. The State may insist, however, that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court.

## B

We have little difficulty in concluding . that this rule applies to the bifurcated procedure employed by Texas in capital cases.[3] This procedure differs from the Illinois statute in effect at the time *Witherspoon* was decided in three principal ways: (1) the *Witherspoon* jury assessed punishment at the same time as it rendered its verdict, whereas in Texas the jury considers punishment in a subsequent penalty proceeding; (2) the *Witherspoon* jury was given unfettered discretion to impose the death sentence or not, whereas the

---

[3] In *Davis* v. *Georgia,* 429 U. S. 122 (1976), the Court applied the *Witherspoon* doctrine to a case arising under a death penalty scheme similar in some respects to the current Texas system. Petitioner and *amicus* suggest that *Davis* conclusively establishes the applicability of *Witherspoon* to the present case. We do not treat the question as foreclosed, however, because the issue was not explicitly raised in that case.

discretion of a Texas jury is circumscribed by the requirement that it impartially answer the statutory questions; and (3) the *Witherspoon* jury directly imposed the death sentence, whereas Texas juries merely give answers to the statutory questions, which in turn determine the sentence pronounced by the trial judge. Because of these differences, the jury plays a somewhat more limited role in Texas than it did in Illinois. If the juror is to obey his oath and follow the law of Texas, he must be willing not only to accept that in certain circumstances death is an acceptable penalty but also to answer the statutory questions without conscious distortion or bias. The State does not violate the *Witherspoon* doctrine when it excludes prospective jurors who are unable or unwilling to address the penalty questions with this degree of impartiality.

Nevertheless, jurors in Texas must determine whether the evidence presented by the State convinces them beyond reasonable doubt that each of the three questions put to them must be answered in the affirmative. In doing so, they must consider both aggravating and mitigating circumstances, whether appearing in the evidence presented at the trial on guilt or innocence or during the sentencing proceedings. Jurors will characteristically know that affirmative answers to the questions will result in the automatic imposition of the death penalty, *Hovila* v. *State,* 532 S. W. 2d 293, 294 (Tex. Crim. App. 1975), and each of the jurors whose exclusion is challenged by petitioner was so informed. In essence, Texas juries must be allowed to consider "on the basis of all relevant evidence not only why a death sentence should be imposed, but also why it should not be imposed." *Jurek* v. *Texas,* 428 U. S. 262, 271 (1976) (opinion of STEWART, POWELL, and STEVENS, JJ.). This process is not an exact science, and the jurors under the Texas bifurcated procedure unavoidably exercise a range of judgment and discretion while remaining true to their instructions and their oaths.

With these considerations in mind, it is apparent that a Texas juror's views about the death penalty might influence

the manner in which he performs his role but without exceeding the "guided jury discretion," 577 S. W. 2d, at 730, permitted him under Texas law. In such circumstances, he could not be excluded consistently with *Witherspoon*. Exclusions under § 12.31 (b), like other exclusions, must be examined in this light.[4]

## C

The State urges that *Witherspoon* and § 12.31 (b) may coexist as separate and independent bases for excluding jurors in Texas and that exclusion under the statute is consistent with the Sixth and Fourteenth Amendments as construed in *Witherspoon*. Brief for Respondent 48. It is the State's position that even if some jurors in the present case were excluded on grounds broader than that permitted under *Witherspoon*, the exclusion was nevertheless proper under § 12.31 (b). The State's argument is consistent with the holdings of decisions in the Texas Court of Criminal Appeals which have considered the relationship between *Witherspoon* and § 12.31 (b).[5] The argument, such as it is, is unpersuasive.

As an initial matter, it is clear beyond peradventure that *Witherspoon* is not a ground for challenging any prospective

---

[4] Even the State concedes that *Witherspoon* "applies" to the Texas system. Brief for Respondent 36–48. The State suggests that this proposition is questionable as a matter of "logic," but agrees that Texas experience and case law conclusively demonstrate *Witherspoon's* applicability. The Texas Court of Criminal Appeals has consistently held that *Witherspoon* is "alive and well" in that State. *E. g., Woodkins* v. *State,* 542 S. W. 2d 855, 862 (1976), cert. denied, 431 U. S. 960 (1977); *Burns* v. *State,* 556 S. W. 2d 270, 275, cert. denied, 434 U. S. 935 (1977); *Brock* v. *State,* 556 S. W. 2d 309, 312, cert. denied, 434 U. S. 1002 (1977); *Whitmore* v. *State,* 570 S. W. 2d 889, 893 (1976).

[5] *E. g., Moore* v. *State,* 542 S. W. 2d 664, 672 (1976), cert. denied, 431 U. S. 949 (1977); *Woodkins* v. *State, supra,* at 862; *Shippy* v. *State,* 556 S. W. 2d 246, 251, cert. denied, 434 U. S. 935 (1977); *Burns* v. *State, supra,* at 275–276; *Freeman* v. *State,* 556 S. W. 2d 287, 297–298 (1977), cert. denied, 434 U. S. 1088 (1978); *Brock* v. *State, supra,* at 313; *Hughes* v. *State,* 562 S. W. 2d 857, 859–861, cert. denied, 439 U. S. 903 (1978); *Hughes* v.

juror. It is rather a limitation on the State's power to exclude: if prospective jurors are barred from jury service because of their views about capital punishment on "any broader basis" than inability to follow the law or abide by their oaths, the death sentence cannot be carried out. *Witherspoon* v. *Illinois,* 391 U. S., at 522, n. 21. While this point may seem too obvious to bear repetition, it is apparent from their frequent references to *Witherspoon* as a ground for "disqualifying" prospective jurors [6] that the State, and the Texas Court of Criminal Appeals, might have fallen into the error of assuming that *Witherspoon* and § 12.31 (b) are both grounds for exclusion, so that there is no conflict if § 12.31 (b) excludes prospective jurors that *Witherspoon* does not.

Nor do we agree with the State's argument that because it has a different origin and purpose § 12.31 (b) cannot and will not lead to exclusions forbidden by *Witherspoon.* Unlike grounds for exclusion having nothing to do with capital punishment, such as personal bias, ill health, financial hardship, or peremptory challenges, § 12.31 (b) focuses the inquiry directly on the prospective juror's beliefs about the death penalty, and hence clearly falls within the scope of the *Witherspoon* doctrine. The State could, consistently with *Witherspoon,* use § 12.31 (b) to exclude prospective jurors whose views on capital punishment are such as to make them unable to follow the law or obey their oaths. But the use of § 12.31

*State,* 563 S. W. 2d 581, 583 (1978), cert. denied, 440 U. S. 950 (1979); *Bodde* v. *State,* 568 S. W. 2d 344, 348–349 (1978), cert. denied, 440 U. S. 968 (1979); *Whitmore* v. *State, supra,* at 893; *Garcia* v. *State,* 581 S. W. 2d 168, 174–175 (1979), cert. pending, No. 79–5464; *Burks* v. *State,* 583 S. W. 2d 389, 393–394 (1979), cert. pending, No. 79–5533.

[6] *E. g.,* Brief for Respondent 34, 42, 48; *Moore* v. *State, supra,* at 672; *Brock* v. *State, supra,* at 313; *Hughes* v. *State,* 562 S. W. 2d, at 860; *Hughes* v. *State,* 563 S. W. 2d, at 586; *Chambers* v. *State,* 568 S. W. 2d 313, 320 (1978), cert. denied, 440 U. S. 928 (1979); *Bodde* v. *State, supra,* at 348; *Garcia* v. *State, supra,* at 175.

(b) to exclude jurors on broader grounds based on their opinions concerning the death penalty is impermissible.

Finally, we cannot agree that § 12.31 (b) is "neutral" with respect to the death penalty since under that section the defendant may challenge jurors who state that their views in favor of the death penalty will affect their deliberations on fact issues. Despite the hypothetical existence of the juror who believes literally in the Biblical admonition "an eye for an eye," see *Witherspoon* v. *Illinois, supra,* at 536 (Black, J., dissenting), it is undeniable, and the State does not seriously dispute, that such jurors will be few indeed as compared with those excluded because of scruples against capital punishment. The appearance of neutrality created by the theoretical availability of § 12.31 (b) as a defense challenge is not sufficiently substantial to take the statute out of the ambit of *Witherspoon.*

### III

Based on our own examination of the record, we have concluded that § 12.31 (b) was applied in this case to exclude prospective jurors on grounds impermissible under *Witherspoon* and related cases. As employed here, the touchstone of the inquiry under § 12.31 (b) was not whether putative jurors could and would follow their instructions and answer the posited questions in the affirmative if they honestly believed the evidence warranted it beyond reasonable doubt. Rather, the touchstone was whether the fact that the imposition of the death penalty would follow automatically from affirmative answers to the questions would have any effect at all on the jurors' performance of their duties. Such a test could, and did, exclude jurors who stated that they would be "affected" by the possibility of the death penalty, but who apparently meant only that the potentially lethal consequences of their decision would invest their deliberations with greater seriousness and gravity or would involve them emo-

tionally.[7]   Others were excluded only because they were unable positively to state whether or not their deliberations would in any way be "affected."[8]   But neither nervousness, emotional involvement, nor inability to deny or confirm any effect whatsoever is equivalent to an unwillingness or an inability on the part of the jurors to follow the court's instructions and obey their oaths, regardless of their feelings about the death penalty.   The grounds for excluding these jurors were consequently insufficient under the Sixth and Fourteenth Amendments.   Nor in our view would the Constitution permit the exclusion of jurors from the penalty phase of a Texas murder trial if they aver that they will honestly find the facts and answer the questions in the affirmative if they are convinced beyond reasonable doubt, but not otherwise, yet who frankly concede that the prospects of the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt.   Such assessments and judgments by jurors are inherent in the jury system, and to exclude all jurors who would be in the slightest way affected by the prospect of the death penalty or by their views about such a penalty would be to deprive the defendant of the impartial jury to which he or she is entitled under the law.

We repeat that the State may bar from jury service those whose beliefs about capital punishment would lead them to ignore the law or violate their oaths.   But in the present case Texas has applied § 12.31 (b) to exclude jurors whose only fault was to take their responsibilities with special seriousness or to acknowledge honestly that they might or might not

---

[7] Prospective jurors Mahon, Jenson, and Ferguson fell into this category. As Jenson said at one point during his *voir dire* examination:

"Well, I think it probably would [affect my deliberations] because afterall [*sic*], you're talking about a man's life here.  You definitely don't want to take it lightly."  Tr. of *Voir Dire* 367.

[8] Prospective jurors Coyle, White, McDonald, and Riddle were excluded on this ground.

be affected. It does not appear in the record before us that these individuals were so irrevocably opposed to capital punishment as to frustrate the State's legitimate efforts to administer its constitutionally valid death penalty scheme. Accordingly, the Constitution disentitles the State to execute a sentence of death imposed by a jury from which such prospective jurors have been excluded.

The judgment of the Texas Court of Criminal Appeals is consequently reversed to the extent that it sustains the imposition of the death penalty.

*So ordered.*

THE CHIEF JUSTICE concurs in the judgment.

MR. JUSTICE BRENNAN, concurring.

Although I join the Court's opinion, I continue to believe that the death penalty is, in all circumstances, contrary to the Eighth Amendment's prohibition against imposition of cruel and unusual punishments. *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting).

MR. JUSTICE MARSHALL, concurring in the judgment.

I continue to believe that the death penalty is, under all circumstances, cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments. *Furman* v. *Georgia*, 408 U. S. 238, 314-374 (1972) (MARSHALL, J., concurring); *Gregg* v. *Georgia*, 428 U. S. 153, 231-241 (1976) (MARSHALL, J., dissenting); *Godfrey* v. *Georgia*, 446 U. S. 420, 437-440 (1980) (MARSHALL, J., concurring in judgment). In addition, I agree with the Court that the exclusion of veniremen in this case violated the doctrine of *Witherspoon* v. *Illinois*, 391 U. S. 510 (1968). I do not, however, join in the Court's assumption that the death penalty may ever be imposed without violating the command of the Eighth Amendment that no "cruel and unusual punishments" be imposed. Cf.

*Beck* v. *Alabama,* 447 U. S. 625, 646 (1980) (MARSHALL, J., concurring in judgment).   I join in the judgment of the Court.

MR. JUSTICE REHNQUIST, dissenting.

The Court today holds that, under *Witherspoon* v. *Illinois,* 391 U. S. 510 (1968), the State of Texas may not excuse from service on a jury considering a capital case persons who are unwilling or unable to swear that the possibility that the defendant will be executed will not affect their deliberations on any issue of fact.   Thus, at a time when this Court should be re-examining the doctrinal underpinnings of *Witherspoon* in light of our intervening decisions in capital cases, it instead expands that precedent as if those underpinnings had remained wholly static and would benefit from expansion of the holding.   I find myself constrained to dissent.

At the time *Witherspoon* was decided, Illinois, like many States, gave the juries in capital cases complete and unbridled discretion in considering the death penalty.   In the words of *Witherspoon* itself, "the State of Illinois empowered the jury . . . to answer 'yes' or 'no' to the question whether this defendant was fit to live."   391 U. S., at 521, n. 20.   This feature of the capital-sentencing scheme under consideration in that case was perhaps the single most important factor in this Court's ultimate decision:

> "[I]n Illinois . . . the jury is given broad discretion to decide whether or not death *is* "the proper penalty" in a given case, and a juror's general views about capital punishment play an inevitable role in any such decision.
>
> "A man who opposes the death penalty, no less than one who favors it, can make the discretionary judgment entrusted to him by the State and can thus obey the oath he takes as a juror.   But a jury from which all such men have been excluded cannot perform the task demanded of it.   Guided by neither rule nor standard,

'free to select or reject as it [sees] fit,' a jury that must choose between life imprisonment and capital punishment can do little more—and must do nothing less—than express the conscience of the community on the ultimate question of life or death." *Id.*, at 519 (emphasis in original; footnote omitted).

However one feels about the constitutionality of excluding persons with qualms about the death penalty from such a jury, one has to admit that the conditions that formed the predicate for *Witherspoon* no longer exist. Our recent decisions on the constitutionality of the death penalty leave little doubt that, contrary to this Court's only slightly less recent decision in *McGautha* v. *California*, 402 U. S. 183 (1971), a State may not leave the decision whether to impose capital punishment upon a particular defendant solely to the untrammeled discretion of a jury. See *Furman* v. *Georgia*, 408 U. S. 238 (1972); *Gregg* v. *Georgia*, 428 U. S. 153 (1976); *Proffitt* v. *Florida*, 428 U. S. 242 (1976); *Jurek* v. *Texas*, 428 U. S. 262 (1976); *Roberts* v. *Louisiana*, 428 U. S. 325 (1976).

The statute presently in force in Texas requires imposition of the death penalty if the jury in a capital case answers three questions in the affirmative:

"(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

"(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

"(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased." Tex. Code Crim. Proc. Ann., Art. 37.071 (b) (Vernon Supp. 1979).

If the jury answers any of these inquiries in the negative, capital punishment cannot be imposed.

It is hard to imagine a system of capital sentencing that leaves less discretion in the hands of the jury while at the same time allowing them to consider the particular circumstances of each case—that is, to perform their assigned task at all. In upholding this system against constitutional challenge in *Jurek* v. *Texas, supra,* the opinion announcing the judgment stressed that this procedure "guides and focuses the jury's *objective consideration* of the particularized circumstances of the individual offense and the individual offender before it can impose a sentence of death." *Id.,* at 274 (emphasis added). Given this mandate to a jury in a capital case to answer certain specific questions on the basis of the evidence submitted, I see no reason why Texas should not be entitled to require each juror to swear that he or she will answer those questions without regard to their possible cumulative consequences.

In holding otherwise, the Court seems to recognize that the jury's role in this case is fundamentally different from that considered in *Witherspoon.* It nevertheless dismisses this difference on the grounds that the sentencing process employed by Texas "is not an exact science" and that "the jurors under the Texas bifurcated procedure unavoidably exercise a range of judgment and discretion while remaining true to their instructions and their oaths." *Ante,* at 46. I would suggest that the Court's observations in this regard are as true when applied to the initial determination of guilt as they are when applied to the sentencing proceeding. In either determination, a juror is required to make "unscientific" determinations and to exercise a good deal of discretion within the bounds of his or her oath. In fact, I can see no plausible distinction between the role of the jury in the guilt/innocence phase of the trial and its role, as defined by the State of Texas, in the sentencing phase. No one would suggest, however, that jurors could not be excused for cause

if they declined to swear that the possibility of capital punishment would not affect their determination of the defendant's guilt or innocence. Cf. *Witherspoon* v. *Illinois,* 391 U. S., at 523, n. 21 ("Nor . . . does today's holding render invalid the *conviction,* as opposed to the *sentence,* in this or any other case").

In his dissent in *Witherspoon,* Mr. Justice Black pointed out that society, as much as the defendant, has a right to an impartial jury. *Id.,* at 535. He also observed that, if a person could not be excluded from a jury for being "too soft" on the death penalty, then a court would be without a basis for excluding someone who was "too hard." As he wrote, "I would not dream of foisting on a criminal defendant a juror who admitted that he had conscientious or religious scruples against *not* inflicting the death sentence on any person convicted of murder (a juror who claims, for example, that he adheres literally to the Biblical admonition of 'an eye for an eye')." *Id.,* at 536 (emphasis added). I cannot believe that the Court would question the excusal of a juror who would not take the challenged oath for those same reasons. To dismiss this possibility, as does the Court here, because "such jurors will be few indeed," *ante,* at 49, is not only to engage in unsupportable speculation, but also to miss the point of Mr. Justice Black's argument. The question is not one of statistical parity, but of logical consistency.

Like the Texas Court of Criminal Appeals, I do not read *Witherspoon* as casting any doubt upon the constitutionality of the oath required by Tex. Penal Code Ann. § 12.31 (b) (1974). See *Hughes* v. *State,* 563 S. W. 2d 581 (1978); *Freeman* v. *State,* 556 S. W. 2d 287 (1977); *Burns* v. *State,* 556 S. W. 2d 270 (1977); *Boulware* v. *State,* 542 S. W. 2d 677 (1976). I therefore would affirm the judgment of the court below.