No. 82–6498. BANKS *v.* TEXAS. Ct. Crim. App. Tex. Certiorari denied.

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth

and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976), I would vacate the death sentence in this case.

JUSTICE MARSHALL, dissenting.

Adhering to my view that the death penalty is under all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments, I would vacate the judgment of the Texas Court of Criminal Appeals insofar as it left undisturbed the death sentence imposed in this case. *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting). However, even if I believed that the death penalty could be imposed under certain circumstances, I would grant certiorari and vacate the death sentence imposed here because the holding below is inconsistent with this Court's decision in *Witherspoon* v. *Illinois*, 391 U. S. 510 (1968).

In *Witherspoon* v. *Illinois*, this Court held that in a case in which the State seeks the death penalty, members of the venire cannot be excluded for cause simply because they voice general objections to the death penalty or express moral or religious scruples against its infliction. The *only* members of the venire who can properly be excluded for cause based upon their attitude toward the death penalty are those who make "unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.*" *Id.*, at 522, n. 21 (emphasis in original). This Court has noted that the logic of *Witherspoon* would invalidate the exclusion for cause of members of a venire who indicate that there are some kinds of cases in which they would refuse to recommend capital punishment. *Ibid.* This Court has also noted that the logic of *Witherspoon* would invalidate the exclusion for cause of prospective jurors in the penalty phase of a capital trial simply because such jurors aver frankly that while they will honestly find facts and answer interrogatories based on their findings, the prospect of the death penalty may affect their honest judgment of the facts or what they may deem to be a reasonable doubt. *Adams* v. *Texas*, 448 U. S. 38, 50 (1980).

At petitioner's trial, the judge excluded several members of the venire on the ground that their opposition to the death penalty

was so irrevocable, automatic, and unbending that they could properly be excused under the *Witherspoon* standard. The record indicates, however, that the trial court and the Texas Court of Criminal Appeals, which affirmed the trial court's imposition of the death penalty, committed clear error in the application of the *Witherspoon* standard.

The Texas Court of Criminal Appeals justified the exclusion of one prospective juror by reference to a single exchange between this juror and the prosecuting attorney:

> "'Q. Is this feeling on your part so firm that you would automatically vote against the death penalty, regardless of what the facts of the case might be?
>
> "'A. Yes, sir.'" *Banks* v. *State*, 643 S. W. 2d 129, 133 (1982).

This one exchange, however, is part of a complicated colloquy the ambiguous character of which is hidden by the Texas court's selective quotation. Certain responses of the potential juror in question indicate that she was apprehensive about the prospect of serving on a jury in a capital case and was, in general, strongly opposed to capital punishment. Other responses indicate, however, that this juror was not so unalterably opposed to the death penalty that she would either automatically vote against the imposition of capital punishment without regard to the evidence developed at trial or allow her general attitude toward the death penalty to prevent her from making an impartial decision as to the defendant's guilt.* For example, the excluded member of the

---

*Under Texas law, upon a finding that a defendant is guilty of a capital offense, the court conducts a separate sentencing procedure to determine whether the defendant shall be sentenced to death or to life imprisonment. At this proceeding, the State and the defendant are permitted to present evidence in support of arguments for and against a sentence of death. At the conclusion of these presentations, the court submits to the jury three questions: (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result; (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased. If the jury finds that the State has proved beyond a reasonable doubt that the answer to each of

venire stated the following in a colloquy with the petitioner's attorney:

"Q. [L]et me ask you if selected as a juror, would you follow the court's instructions and answer the questions from the evidence that you heard?

"A. I sure would, to the best of my ability.

"Q. All right, and then you would let the law take its course. Then the Judge and his job come into play after you answer questions. Would you do that.

"A. Right; I sure would.

"Q. All right, and regardless of the death penalty or life sentence, you would answer—you would follow the Judge's instructions to you, would you not?

"A. Well, I would feel like I had to, you know.

"Q. All right, and you would answer any questions asked of you from the evidence that you heard in this trial. Would you do that?

"A. Yes, sir.

"Q. I submit, Your Honor, she is qualified." Pet. for Cert. 4–5.

Indeed, the question and answer sequence immediately prior to this potential juror's exclusion by the trial judge shows that she expressed a positive conviction that she was willing to set aside her personal antipathy toward capital punishment and find facts solely on the basis of evidence presented at trial.

"'Q. Mrs. Rogers, being a conscientious citizen of our county, you would, if chosen as a juror in this case or any case follow the judge's instructions, and you would answer any questions that the judge gives you from the evidence that you heard in the courtroom, wouldn't you?

"'A. I certainly would.'" 643 S. W. 2d, at 135.

These statements clearly indicate that the trial court plainly erred in excluding this potential juror. If a member of the venire is mistakenly excluded, any subsequently imposed death sentence

---

the three questions is "yes," the court imposes the death sentence. If the jury finds that the answer to any question is "no," the court imposes a sentence of life imprisonment. See Tex. Code Crim. Proc. Ann., Art. 37.071 (Vernon 1981 and Supp. 1982–1983).

cannot be allowed to stand. See, e. g., Davis v. Georgia 429 U. S. 122 (1976) (per curiam). This Court should review this case in order to enforce the standards established by Witherspoon and Adams. I therefore dissent from the denial of certiorari.