**Ex parte Billy George HUGHES, Jr.**

**No. 69725.**

Court of Criminal Appeals of Texas, En Banc.

March 18, 1987.

Gerald M. Birnberg (Bruce Griffiths, of counsel), Houston, for appellant.

Charles D. Houston, Dist. Atty., Bellville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

DUNCAN, Judge.

After being convicted of capital murder in connection with the brutal, unprovoked, and fatal shooting of a Texas Highway Patrolman and receiving the death penalty, applicant has requested post-conviction habeas corpus relief from this Court pursuant to Art. 11.07, V.A.C.C.P.

Procedurally and historically the following has transpired: the case was tried in Matagorda County following a change of venue from Austin County; this Court affirmed the judgment of the trial court on March 15, 1978, *Hughes v. State*, 563 S.W.2d 581 (Tex.Cr.App.1978). The appli-

cant's request for a rehearing was later denied by this Court. The United States Supreme Court denied his petition for writ of certiorari on March 5, 1979.

Returning to this Court, the applicant's first writ of habeas corpus was denied, without written opinion, on July 2, 1979.

Confronting an execution date of July 9, 1979, the judge of the United States District Court, Southern District of Texas, Galveston Division, on July 3, 1979, granted the applicant a stay of execution.

Thereafter, the federal district court dismissed the applicant's application for writ of habeas corpus because he failed to exhaust his state remedies before he filed the writ.[1]

Time was truly a friend to the applicant because during this series of events and most relevant to this Court's resolution of the applicant's claims, the United States Supreme Court decided *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).[2] Accordingly, we have accepted his application for writ of habeas corpus for filing and grant relief.

In his first contention the applicant complains of the trial court's granting the State's challenge for cause and excusing Travis Harrison and several other prospective jurors. Because of our disposition of this issue it is only necessary that we detail the voir dire examination of Travis Harrison.[3] The record reflects that in examining Mr. Harrison the State discovered that he thought capital punishment was "necessary perhaps, in the most extreme cases," and that he could conceive of a situation in which he could impose the death penalty. After detailing the role played by the special issues and the participation of the jury in our capital murder proceedings the State asked: "... could you answer those questions without being influenced by what you thought the penalty might be?" The prospective juror conceded that although he would "be aware of the penalty ... when I answered the questions," he could answer the special issues. The following then occurred:

Mr. Kitzman [prosecutor]: Well, I—the law says that prospective jurors ... should be informed that a sentence of life imprisonment or death is mandatory upon the conviction of a capital felony. That says a prospective juror will be disqualified from serving on such jury, unless he states under oath that *the mandatory penalty of death or imprisonment for life will not affect his deliberations* on any issue of fact, and that's why I'm pestering you so much.

Mr. Harrison: Yeah. There's lots of difference between death and life imprisonment as far as I'm concerned.

Mr. Kitzman: *Are you telling me then you could not deliberate on these questions of fact without being influenced by your knowledge of that penalty; is that what you're saying?*

Mr. Harrison: *Well, I'm afraid that's what I'm saying.* [Emphasis added passim.]

Mr. Kitzman: If that's the way you feel that's perfectly all right, as I say, I'm not here to persuade you to feel differently about anything, but simply to know how you feel.

Your Honor, I challenge for cause, on the basis of the inability of the juror to qualify under that article. [V.T.C.A. Penal Code, Sec. 12.31(b)]

Responding to the State's statutorily based challenge, the trial court excused prospective juror Harrison.

V.T.C.A. Penal Code, Sec. 12.31(b) provides:

---

1. These details are to a great extent derived from the application for writ of habeas corpus. It would be more appropriate that documents supporting such assertions be attached to the pleadings.

2. Although jury selection in this case preceded the Supreme Court's decision in *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), we are obligated to review it in light of that opinion. *Mead v. State*, 645 S.W.2d 279 (Tex.Cr.App.1983).

3. "We look to the record as a whole in reviewing a ruling on a challenge to a veniremember." *Brandley v. State*, 691 S.W.2d 699 (Tex.Cr.App. 1985).

Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact.

Quite simply, in *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), the Supreme Court decided that Sec. 12.31(b) was being unconstitutionally utilized in that it "contravened the Sixth and Fourteenth Amendments as construed and applied in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)." *Id.,* 100 S.Ct. at 2524. No longer then could the State have excluded from jury service those jurors who merely said "that they would be 'affected' by the possibility of the death penalty, but who apparently meant only that the potentially lethal consequences of their decision would invest their deliberations with greater seriousness and gravity or would involve them emotionally." *Id.* at 2528.

Examining Harrison's comments it is clear that the trial court erred in granting the State's challenge for cause. Harrison explicitly stated that capital punishment was necessary in certain cases. He also said that he could answer the special issues if the State sustained its burden of proof. Harrison stained his otherwise positive testimony and precipitated the State's challenge for cause by honestly conceding that the possible automatic infliction of death would "influence" his consideration of factual issues. But, unlike the venireperson in *Mann v. State,* 718 S.W.2d 741 (Tex.Cr. App.1986), Harrison never stated that such an awareness would affect his responsibility as a juror.[4] In fact, when defense counsel questioned Harrison he clarified his attitude rather clearly. At the outset, defense counsel detailed the Texas capital murder scheme as well as its history. Then defense counsel asked Harrison if he could "answer the questions [special issues]

based on the facts in evidence." In his answer, Harrison noted neither he nor any other juror in "answering those questions ... [could forget] what the judgment is going to be...." He then stated: "Now, like I said, *I could answer both questions in the affirmative* [emphasis added] in the most extreme case, but I couldn't answer him without being influenced by what I think the judgment would be."

In *Graham v. State,* 643 S.W.2d 920 (Tex.Cr.App.1983) this Court reversed the defendant's conviction because a juror was excluded contrary to *Adams v. Texas, supra.* In *Graham* the venireperson, somewhat similar to Harrison, expressed a favorable attitude toward the death penalty in some instances. However, and again similar to Harrison's dilemma, confessed that the automatic imposition of life or the death penalty would, to quote the prosecutor, "be a consideration that you would give in your deliberations...." *Graham v. State, supra* at 923. We concluded that although "the precise statutory question was answered negatively ...," *Id.* at 923, *Adams v. Texas, supra,* does not permit the exclusion of a juror simply because "the mandatory penalty of death or imprisonment for life might affect his deliberations." *Id.,* 100 S.Ct. at 2524. Instead, the question is not "if" but "how much." Or, in other words, it is a matter of degree—to what extent would the juror be affected. Since it was not shown that the prospective juror would have been affected by the automatic punishment beyond that recognized in Sec. 12.31(b) the exclusion was contrary to both *Adams* and *Witherspoon.*

The same omission dictates the granting of relief in this case. Although Harrison noted that his answers would be "influenced" by the possible punishment there is nothing in the record to suggest that this "influence" would do anything other than " 'invest ... [his] deliberations with greater seriousness and gravity or would involve ... [him] emotionally.' " *Adams v. Texas, supra* at 2528.

---

4. In *Mann v. State, supra,* the juror responded with an unequivocal "no" to the following question asked by the prosecutor:

"And regardless of what the evidence might be, you could not render a true verdict in this situation." *Id.* at 748.

 

The State argues that *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) compels us to reject the applicant's claim. The decision in *Wainwright v. Witt, Id.*, did basically three things: "(1) modified *Witherspoon* to the extent that ' "automatically ... [voting] against the imposition of capital punishment," ' *Id.*, 105 S.Ct. at 848, as set forth in footnote 21 of the opinion, is no longer the proper standard for determining when a prospective juror may be excluded for cause," *Id.* at 852, (2) no longer does a juror's bias have to be proved with "unmistakable clarity," and (3) requires that great deference be given to the trial judge's discretion in excusing for cause jurors who equivocate in their answers to death penalty issues. What it did not do, however, was change the principle enunciated in *Adams v. Texas, supra.* Thus, "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath,' " *Wainwright v. Witt, supra* at 852, is still the standard to be applied. See also: *Mann v. State, supra.*

Comparing this standard to Harrison's statements during the voir dire examination it is quite evident that his pronouncement that he would be influenced by the possibility of death as an alternative punishment cannot be considered synonymous with " 'substantially impair ... [his] performance ... as a juror....' " *Id.* at 749.

Therefore, rather than compelling us to decide this issue adverse to the applicant, *Wainwright v. Witt, supra* compels us to reach a decision that is positively responsive to the applicant's claim.

Since "[t]he death penalty may not be imposed if even one prospective juror has been excluded in violation of *Witherspoon* ... the judgment of guilt must be reversed." *Graham v. State, supra* at 924.

Accordingly, the judgment of conviction in Cause No. 5140 in the 130th District Court of Matagorda County is ordered set aside and applicant is remanded to the custody of the Sheriff of Matagorda County to answer the indictment in this cause. A copy of this opinion will be forwarded by the Clerk of this Court to the Texas Department of Corrections.

WHITE, J., dissents.