**Ex parte James Carol WILLIAMS, Applicant.**

**No. 69970.**

Court of Criminal Appeals of Texas, En Banc.

April 20, 1988.

Charles Rice Young, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and William J. Delmore, III, and Caprice Cosper, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

### OPINION

DUNCAN, Judge.

After being convicted of capital murder in connection with the fatal shooting of a Shamrock service station attendant during the course of a robbery, and receiving the death penalty, applicant, James Carol Williams, has requested habeas corpus relief from this Court pursuant to Art. 11.07, V.A.C.C.P. This case was originally tried in Harris County, and the judgment of the trial court was affirmed by this Court on June 11, 1980. *Williams v. State,* 604 S.W. 2d 146 (Tex.Cr.App.1980). The applicant's request for rehearing was later denied on September 17, 1980. On April 10, 1987, the United States Supreme Court denied his petition for writ of certiorari. This Court on January 5, 1988, granted applicant's stay of execution pending the disposition of this post-conviction application for writ of habeas corpus.

As in *Ex parte Hughes,* 728 S.W.2d 372 (Tex.Cr.App.1987), the passage of time has proven to be a true ally to applicant. Since

applicant's trial and conviction the United States Supreme Court decided *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed. 2d 581 (1980).

It is the contention of applicant that the trial court impermissibly granted the State's challenge for cause and excused prospective juror Manuel Balles. Although the voir dire examination of venireperson Balles, was conducted two years before the Supreme Court decided *Adams v. Texas, supra,* this Court has given retroactive effect to *Adams* and is bound by that decision. *Ex parte Hughes, supra; Ex parte Bravo,* 702 S.W.2d 189 (Tex.Cr.App.1982); *Mead v. State,* 645 S.W.2d 279 (Tex.Cr.App. 1983).

At the outset of the voir dire examination of Balles, the trial court and the attorneys attempted to detail the Texas capital murder scheme and procedure relevant to Art. 37.071(b), V.A.C.C.P.[1] After Balles indicated that he possessed some conscientious scruples in regard to the death penalty the following occurred:

> Mr. Nettles [prosecutor]: Knowing that, the fact that you do have certain objections, knowing that when you go back there—I'll explain a little about a criminal case. There are two phases to it. The first phase is to decide whether or not the man is guilty. Play like you are on the jury. You have already been picked and we've selected you; okay?
>
> Mr. Balles: Right.
>
> Mr. Nettles: You are on [sic] there. On the first phase of the trial you're going to hear the facts of the case which in this particular case involved a robbery and a murder altogether, at the same time; okay?
>
> Mr. Balles: Okay.

> Mr. Nettles: You are going to listen to evidence on that case. Now, after we've put on the evidence and they've put on the evidence, you have to go back in a jury room with eleven other people and you've got to decide based on that evidence that you heard whether or not he is guilty; okay?
>
> Mr. Balles: Okay.
>
> Mr. Nettles: All right. Now, knowing that when you go back there and you find the man is either guilty or not guilty, based on the evidence you heard—I can't tell you what the evidence is. The Judge doesn't know what it is. Lawyers each have their own versions of what that evidence is. But knowing if you find this man guilty, if you decide he is guilty of this offense as alleged, that there is only two ways the jury can go. Either he's going to get life or get death. But knowing death is one of the possible punishments, knowing this man can die for it and knowing you are opposed to it, the way you stated to the Court and the rest of us, you have opposition to the death penalty, will that effect you in voting on whether or not he is guilty or not guilty?
>
> In other words, sir, is it going to have some effect on your deliberating knowing if you find the man guilty he can possibly die and you have stated that you are opposed to the death penalty? Is that going to affect you in your deliberations in making that decision?
>
> Mr. Balles: Yes.
>
> Mr. Nettles: It will affect you?
>
> Mr. Balles: Yes.
>
> Mr. Nettles: Challenge for cause, Your Honor.

1. Art. 37.071(b) deals with the punishment phase of a capital murder trial and sets out the questions which must be asked of the jury. If the State proves beyond a reasonable doubt that the answers should be in the affirmative, and the jury so answers, the trial court then has the statutory duty to impose the death penalty. Section (b) states in pertinent part:

(b) On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

The Court: You are excused.

Mr. Crow [defense attorney]: May we have questions before the challenge is accepted by the Court? There is a possibility this person doesn't understand.

The Court: Go ahead. Ask your questions.

Responding to the inartful questions posed by defense counsel, Mr. Balles agreed that he would not have any qualms about giving "a guy" the death penalty in the proper case,[2] and had previously indicated to the trial court that his conscientious scruples concerning the death penalty would not cause him to "... disregard the facts in the case and vote for something less than death[.]"

Eventually the trial court sustained the State's challenge for cause as originally interposed,[3] and based upon the record it can only be concluded that the exclusion of prospective juror Balles was solely grounded upon V.T.C.A. Penal Code, Sec. 12.31(b), which provides:

Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact.

In *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the Supreme Court decreed that the State infringes on a capital murder defendant's right to a fair and impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution when it excuses for cause all veniremembers who express conscientious objections to capital punishment. As indicated in both *Ex parte Russell*, 720 S.W.2d 477, 482 (Tex.Cr.App.1986) and *Knox v. State*, 744 S.W.2d 53, 56 (Tex. Cr.App.1987), the proper and exclusive basis upon which a prospective juror could be excluded for cause appeared to be the reasons set forth in *Witherspoon*'s footnote 21, when it was shown that said juror made it

unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at trial of the case before them, or (2) that their attitude toward the death penalty might prevent them from making an impartial decision as to the defendant's guilt.

*Witherspoon, supra,* 391 U.S. at 522, n. 21 88 S.Ct. at 1722, n. 21. [Emphasis original.]

*Adams v. Texas, supra,* suggested that the standard enunciated in *Witherspoon*'s footnote 21 was not as rigid as first believed, and established as a general proposition "that a juror may not be challenged for cause based upon his views of capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath." *Id.,* 100 S.Ct. at 2526. The pertinent holding of *Adams v. Texas, id.,* was that the State could not, consistent with the Federal Constitution, utilize § 12.31(b) of the Texas Penal Code to exclude from capital murder jury service those jurors "who stated that they would be 'affected' by the possibility

---

**2.** In light of the statutory scheme outlined in Art. 37.071(b), *supra,* we observe that neither the trial court, defense counsel, nor the prosecutor asked a particularly definitive question concerning the jury's function at the punishment phase of a capital murder trial. At the punishment phase of a capital murder trial it is the jury's function to answer the special issues submitted, based upon the evidence, while it is the trial court's duty to impose the appropriate sentence based on the jury's response to the special issues. Mr. Balles was not queried as to whether his conscientious scruples concerning the death penalty would cause him to consciously disregard the evidence, (assuming the State met its burden of proof and showed the special issues should be answered in the affirmative) and automatically answer one of the special issues in the negative in order to prevent the trial court from imposing the sentence of death.

**3.** The State asserts that no error was preserved as defense counsel's only objection to the exclusion of prospective juror Balles was, "Please note our exception, Your Honor." This contention is without merit as *Adams v. Texas, supra,* was decided subsequent to applicant's trial. See *Ex parte Bravo, supra,* at 191.

of the death penalty, but who apparently meant only that the potentially lethal consequences of their decision would invest their deliberations with greater seriousness and gravity or would involve them emotionally." *Adams v. Texas, id.,* at 2528; see also *Ex parte Hughes, supra,* at 374.

In *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the Supreme Court clarified its decision in *Witherspoon,* and reaffirmed the standard suggested in *Adams,* as "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment." *Id.,* 105 S.Ct. at 851. This Court, in *Ex parte Hughes, supra,* aptly summarized the effect of the *Witt* decision on the previous standards announced in *Witherspoon:*

> The decision in *Wainwright v. Witt, id.,* did basically three things: '(1) modified *Witherspoon* to the extent that "automatically" ... [voting] against the imposition of capital punishment,' *id.,* 105 S.Ct. at 845, as set forth in footnote 21 of the opinion, is 'no longer the proper standard for determining when a prospective juror may be excluded for cause,' *id.,* at 852, (2) 'no longer does a juror's basis have to be proved with "unmistakable clarity," ' and (3) requires that great deference be given to the trial judge's discretion in excusing for cause jurors who equivocate in their answers to death penalty issues. Thus, 'whether the juror's view would "prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and oath," ' *Wainwright v. Witt, supra* at 852, is still the standard to be applied. See also: *Mann v. State,* [718 S.W.2d 741 (Tex.Crim.App.1986) ], *supra.*

*Ex parte Hughes, supra,* at 375.

Applying these standards to Balles's comments during voir dire examination the record reveals that he was excluded at the insistence of the State simply because his views in opposition to the death penalty would "affect" him in his deliberations. Balles's exclusion was contrary to both *Adams v. Texas, supra* and *Wainwright v. Witt, supra.* The questioning of Balles did not go far enough to disqualify him, *viz:* he never stated he would consciously distort answers to special issues in order to prevent the imposition of the death penalty. It was incumbent upon the proponent of the challenge for cause to establish affirmatively on the record that the prospective juror's conscientious scruples toward the death penalty would affect the prospective juror to such a degree and to such an extent that his or her performance as a juror would be substantially impaired. *Ex parte Hughes, supra,* at 374. Considering the entire voir dire examination of Balles, we find that the record is totally devoid of an adequate basis to support the trial court's conclusion that Balles was disqualified to serve on a capital murder jury because of his views on capital punishment. See *Gardner v. State,* 730 S.W.2d 675, 684 (Tex.Cr.App.1987).

Since "the death penalty may not be imposed if even one prospective juror has been excluded in violation of *Witherspoon* ... the judgment of guilt must be reversed." *Ex parte Hughes, supra,* at 375; *Graham v. State,* 643 S.W.2d 920 at 924 (Tex.Cr.App.1983); see also: *Davis v. Georgia,* 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976); *Gray v. Mississippi,* 481 U.S. ——, 95 L.Ed.2d 622, 107 S.Ct. 2045 (1987).

Accordingly, the judgment of conviction in Cause No. 266,219 in the 179th District Court of Harris County is ordered set aside and applicant is remanded to the custody of the Sheriff of Harris County to answer the indictment in this cause. A copy of this opinion will be forwarded by the Clerk of this Court to the Texas Department of Corrections.