Otis PETERKIN,

v.

Martin HORN, et.al.

No. CIV.A. 95–CV–3989.

United States District Court,
E.D. Pennsylvania.

March 20, 2002.

Billy H. Nolas, James Anderson, Defender Association of Phila., Kenneth L. Fox, Stephen A. Whinston, Philadelphia, PA, for plaintiff.

Thomas W. Dolgenos, Helen Kane, Philadelphia, District Attorneys Office–Federal Litigation, Philadelphia, PA, for defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Petitioner now seeks the issuance of a Certificate of Appealability as to his claim that his trial counsel was ineffective for failing to object to the improper exclusion for cause of prospective jurors who exhibited any skepticism about the death penalty. The Commonwealth opposes Petitioner's Application. For the reasons which follow, we deny Mr. Peterkin's Application.

### Standards Governing Applications Under 28 U.S.C. § 2253

Since the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), appeals from decisions in habeas corpus cases arising out of state proceedings have been determined by the following version of Section 2253:

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from-

(A) the final order in a habeas corpus proceeding in which the detention

complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

To obtain a certificate of appealability ("COA") under § 2253(c), a habeas prisoner must therefore make a substantial showing of the denial of a constitutional right, a demonstration that includes showing that reasonable jurists could debate whether (or for that matter agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–484, 120 S.Ct. 1595, 1603–1604, 146 L.Ed.2d 542 (2000), quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Thus, where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward. The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 120 S.Ct. at 1604. *See Also: U.S. v. Cepero*, 224 F.3d 256, 262–263 (3d Cir.2000).

### *Discussion*

Here, Petitioner argues that under the Third Circuit's recent decision in *Szuchon v. Lehman*, 273 F.3d 299 (3d Cir.2001), he is entitled to appellate review of this Court's denial of habeas corpus relief for his trial counsel's ineffective failure to object to the improper exclusion for cause of several prospective jurors.[1] In *Szuchon*, also a death penalty case, the petitioner alleged that the trial court improperly allowed the exclusion for cause of six prospective jurors who voiced opposition to the death penalty. In granting the petitioner a new trial for his trial counsel's failure to object to the prosecution's challenge for cause of one potential venireman because he expressed disbelief in the death penalty, the Third Circuit merely followed earlier Supreme Court precedent originally established in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) and its progeny. Indeed, in *Witherspoon*, the Court held "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so select-

---

1. As we noted in our Memorandum Opinion of November 6, 2001 at pp.57–59, a two-part test applies to determine whether trial counsel's performance was so deficient as to have violated his client's Sixth Amendment right to a fair trial. First, the defendant must show that counsel's performance was deficient, i.e. that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1511–1512, 146 L.Ed.2d 389, (2000); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Second, the defendant must show that the deficient performance prejudiced the defense. *Williams*, 120 S.Ct. at 1512. Stated otherwise, the defendant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's error, the result would have been different. *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986).

ed." *Witherspoon*, 391 U.S. at 521–522, 88 S.Ct. at 1777.

■ *Witherspoon's* holding is grounded in the right to a fair and impartial jury guaranteed to state criminal defendants by the Sixth and Fourteenth Amendments and thus veniremen can be excluded based on their views on capital punishment only if they would be biased and lack impartiality in hearing the case. *Szuchon*, 273 F.3d at 327. Stated otherwise, it is now the general proposition "that a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980).

■ As with any other trial situation where an adversary wishes to exclude a juror because of bias, it is the adversary seeking exclusion who must demonstrate, through questioning, that the potential juror lacks impartiality. *Wainwright v. Witt*, 469 U.S. 412, 423, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). It is then the trial judge's duty to determine whether the challenge is proper. *Id.* Thus, before it can sustain the exclusion, the judge must make a factual determination that the prospective juror would be biased and, on federal habeas review, that determination of bias is entitled to the presumption of correctness. *Szuchon*, 273 F.3d at 328. It should be noted, however, that determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism. This is because many veniremen simply cannot be asked enough questions to reach the point where their bias has been made unmistakably clear; these veniremen may not know how they will react when faced with imposing the death sentence, or may

be unable to articulate, or may wish to hide their true feelings. *Wainwright*, 469 U.S. at 424–425, 105 S.Ct. at 852.

■ In this case, the petitioner takes issue with his trial counsel's failure to object to the prosecution's striking three potential jurors from his panel. With respect to Juror No. 506, a fairly lengthy interrogation took place as to whether this individual had any moral, religious or philosophical beliefs that would prevent him from considering the imposition of the death penalty and as to whether he would choose a lesser verdict than supported by the evidence solely to avoid considering the death penalty or life in prison. In addition to evincing reluctance to answer these questions, Juror No. 506's answer also reflected an irreconcilable confusion over whether a death sentence actually meant that the defendant would be executed:

> "If the death penalty was practiced in the State of Pennsylvania, in other words, if there was an electrocution two weeks ago, I don't think I would be in favor of the death penalty. Since it's not practiced, since I think it's a term used to give life imprisonment, in that sense, I am for it. I know that's a round-about way, but since it's not really practiced, you know … If he was guilty and he would be taken out and be given the death penalty immediately, without any question I would find it difficult in giving the death penalty. If I knew without a shadow of a doubt that it would be implemented, if I knew it would be carried out, I think I might find some reservation with that possibly."

We find that these statements sufficiently demonstrate that Juror No. 506 was clearly confused and likely to be impaired in his ability to follow the court's instructions and abide by his oath because of his be-

liefs. We therefore do not find that Petitioner's trial counsel's representation fell below the required objective standard of reasonableness in his failure to object to this individual's disqualification.

We reach the same conclusion with regard to Juror Nos. 326 and 75 who testified respectively as follows in response to questioning about what moral, ethical and/or religious scruples would prevent them from considering returning the death penalty in the case:

Juror No. 326:

"I was a conscientious objector to the war. I was raised a Quaker. I'm less clear now, but certainly within the idea of what the judge said this morning about a reasonable doubt and the death penalty. I could not put the two together."

Juror No. 75:

"I just don't believe in the death penalty because there's always room for reason and once the death penalty has been put into action there is nothing that can be done."

Again, in light of the presumption of correctness afforded the trial judge's determination of bias and the standard of review afforded claims of ineffective assistance of counsel, we cannot find that the petitioner here has made a substantial showing of the denial of a constitutional right or that he has demonstrated that reasonable jurists would find our previous assessment of this constitutional claim to have been debatable or wrong. For these reasons Mr. Peterkin's application for the issuance of a certificate of appealability is denied.

An order follows.