**Randy BAEZ ARROYO, Petitioner,**

v.

**Douglas DRETKE, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.**

No. Civ.A.SA–01–CA–0976–XR.

United States District Court,
W.D. Texas,
San Antonio Division.

March 29, 2005.

Rogelio F. Munoz, Attorney at Law, Uvalde, TX, Anthony Martin Smith, Law Office of Anthony Martin Smith, San Antonio, TX, David R. Dow, Texas Innocence Network, Gerald J. Bierbaum, Law Office of Gerald Bierbaum, Houston, TX, for Petitioner.

W. Erich Dryden, Office of the Attorney General State of Texas, Austin, TX, for Respondent.

## ORDER

RODRIGUEZ, District Judge.

On this date the Court considered the Petition for Writ of Habeas Corpus. Petitioner seeks review of his March 1998 conviction for capital murder and sentence of death through this habeas action pursuant to 28 U.S.C. § 2254. Petitioner claims that he was convicted in violation of the

Confrontation Clause and his right to a fair trial and due process. Petitioner also claims that he was denied effective assistance of counsel in violation of the Sixth Amendment, and that the imposition of the death penalty upon him is unconstitutional because he was under the age of 18 at the time of the offense. After considering the arguments and the record, the Court finds that all relief requested by Petitioner is denied except for Petitioner's claim that the death penalty cannot be assessed against him due to his age, on which his claim is conditionally granted.

## I. Factual and Procedural Background

Petitioner was convicted and sentenced to death for the March 10, 1997 murder of Air Force Captain Jose Cobo.

## A. The Offense

There is no genuine dispute about the operative facts surrounding Petitioner's offense. On the evening of March 10, 1997, Petitioner and Vincent Gutierrez, as well as several other persons, met at the residence of Christopher Suaste to discuss Petitioner's desire to steal a Mazda RX-7 automobile for parts.[1] The following morning, Suaste drove Petitioner and Gutierrez first to the residence of Miguel Riojas, Petitioner's cousin, and then to a nearby apartment complex where a red Mazda RX-7 owned by Air Force Captain Jose Cobo was parked.[2] Gutierrez and Petitioner entered the driver's side of the red Mazda and drove the car out of the

apartment complex.[3] Suaste drove his vehicle back to his home; seeing Captain Cobo lying on the shoulder of the highway with blood stains on his shirt along the way.[4]

Several hours later, Suaste received a pair of telephone calls, first from Petitioner and then from Gutierrez, asking Suaste to come to a location in South San Antonio to pick them up.[5] Suaste, along with Sean Lowe, drove to the location in question and noticed that Gutierrez was wearing a brown tee shirt and a pair of black gym shorts bearing the "USAF" logo, neither of which he had been wearing previously.[6] When Suaste criticized Gutierrez's apparel, Gutierrez explained that his clothes had blood on them and that he had obtained the clothes he then had on from the back of the red Mazda.[7]

When Lowe and Suaste questioned Petitioner and Gutierrez about what had happened, Gutierrez stated that he had forced Cobo at gunpoint to move to the passenger seat of the red Mazda and then climbed into the rear of the vehicle while Petitioner drove the vehicle from the apartment complex. Gutierrez explained that when Cobo had begged for his life and offered his wallet, Gutierrez had reassured him that he would be released. Nonetheless, Cobo attempted to exit the vehicle but was restrained by a seat belt. At that point, Gutierrez grabbed Cobo to prevent him from leaping from the moving vehicle and Petitioner yelled, "Shoot him. Shoot him. He's trying to escape." Gutierrez then

---

1. Statement of Facts from Trial [hereinafter "S.F. Trial"], Vol. XVI at 183–90, 228–29 (testimony of Christopher Suaste); *Id.,* Vol. XVII at 21–23; *Id.,* Vol. XIX, at 32–34 & 109–10 (testimony of Sean Patrick Lowe).

2. *Id.,* Vol. XVI at 192–95 (testimony of Suaste).

3. *Id.* at 202–03.

4. *Id.* at 207–08

5. *Id.,* Vol. XVI at 210–12 (testimony of Suaste); *Id.,* Vol. XIX at 40–42 (testimony of Lowe).

6. *Id.,* Vol. XVI at 213 (testimony of Suaste); *Id.* Vol. XIX at 42–44, 53, 96 (testimony of Lowe).

7. *Id.,* Vol. XIX at 53–54, 96 (testimony of Lowe).

fired his pistol twice, striking Cobo in the back and causing Cobo to begin choking and coughing up blood. As they drove on, Gutierrez informed Petitioner that he did not want to drive around with a "dead man" in the car with them and, after he directed Petitioner to slow the vehicle, he shoved Cobo out of the moving vehicle onto the shoulder of the highway.[8] Gutierrez also displayed two spent shell casings he identified as having come from the shooting.[9] Later that evening, when a television news report about Cobo's murder was broadcast on the local news, Gutierrez again described the shooting and told others at Suaste's apartment that Cobo got what he deserved for trying to escape.[10]

Petitioner voluntarily confessed his involvement in Cobo's murder the same night and led police to the .357 caliber handgun Gutierrez had used to kill Cobo, as well as the .25 caliber handgun Petitioner had carried during Cobo's robbery and kidnaping.[11] On May 28, 1997, a Bexar County grand jury indicted Petitioner, Gutierrez, and Suaste on charges of capital murder arising from Cobo's murder.[12]

## B. Pretrial Proceedings

At a hearing December 1, 1997, the prosecution announced that it had reached an agreement to sever the case against Suaste from that of Petitioner and Gutierrez.[13] Petitioner and Gutierrez both moved for severance of their joint capital murder trial.[14] During the course of that hearing, the prosecution expressly and specifically represented that it had no intention of presenting any testimony at a joint trial establishing that either of the remaining two co-defendants had made any oral statements implicating the other defendant unless the trial court first authorized the admission of such testimony at a hearing outside the jury's presence.[15]

---

8. *Id.*, Vol. XVI at 215–22, 252 (testimony of Suaste); *Id.*, Vol. XVII at 9–11; *Id.*, Vol. XIX at 54, 96–99 (testimony of Lowe).

9. *Id.*, Vol. XVI at 219–20 (testimony of Suaste).

10. *Id.*, Vol. XIX at 100–01 (testimony of Lowe); *Id.*, Vol. XIX at 188–91 (testimony of Concepcion Suaste).

11. *Id.*, Vol. XIX at 64–73, 76–80 (testimony of Daniel Gonzales).

12. In a single count, Petitioner's indictment charged him in paragraph A with having intentionally and knowingly caused Cobo's death by shooting Cobo with a deadly weapon, i.e., a firearm, while in the course of committing and attempting to commit the robbery of Cobo. Paragraph B charged petitioner with having intentionally and knowingly caused Cobo's death by shooting Cobo with a deadly weapon, i.e., a firearm, while in the course of committing and attempting to commit the kidnaping of Cobo.

13. *Id.*, Vol. II at 1.

14. *Id.*, Vol. II at 1–2, 11.

15. *Id.*, Vol. II at 10–12:

THE COURT: My concern is if an individual gets on there and says "One defendant told me that he and another defendant committed an offense," then if we are trying them together, there is a *Bruton* problem and cross-examination problem as to the one individual.

MR. RICHARDSON: I understand that. I would not intend to put that type of testimony in front of the jury. That would be probably double hearsay. I would ask the witness on the stand for example, "Did Vincent Gutierrez tell you he committed this offense?" If that persons says yes, we will leave it at that. That witness would be instructed not say "Vincent said both of us did it."

Even then in some scenarios I would not put it on until we had a hearing outside the presence of the jury. I think there is some case law that says in certain situations that is permissible, but I don't intend to do that at this point. I will not do it until we have had a hearing outside the presence of the jury.

THE COURT: So anything further on the severance issue?

Based on those representations, the state trial court denied both motions for severance.[16]

At a hearing held January 16, 1998, both Petitioner and Gutierrez re-urged their motions for severance, but were denied. The state trial court granted the defendants' motion in limine and instructed the prosecution that it would not admit any oral statements made by either of the co-defendants which implicated the other defendant in Cobo's murder without a hearing.[17]

## C. Capital Murder Trial

The guilt-innocence phase of Petitioner's and Gutierrez's joint capital murder trial commenced on February 23, 1998. The jury heard testimony from both Suaste and Lowe, summarized above, as to Gutierrez's explanation of Cobo's robbery, kidnapping, and murder, including his statements implicating Petitioner. The medical examiner testified that Cobo died from two gun shot wounds to the back, either of which would have proven fatal by itself.[18] The prosecution introduced testimony from law enforcement officers and others regarding the recovery of Cobo's abandoned vehicle and Gutierrez's blood-stained clothing from locations near where

Suaste and Lowe had picked up Gutierrez and Petitioner. Several other prosecution witnesses testified that they had seen Cobo's struggle to exit the red Mazda and Cobo's body being pushed from the moving vehicle during morning rush hour traffic. A prosecution ballistics expert testified that the .357 handgun to which Petitioner led police on the evening of the murder had fired both a bullet that fell out of Cobo's chest when an Air Force flight surgeon attempted cardiopulmonary resuscitation at the scene and another bullet recovered from the floorboard of the red Mazda.[19] A prosecution DNA expert testified that the blood found on Gutierrez's clothing matched that of Cobo.[20] Other prosecution witnesses identified the black USAF gym shorts and brown tee shirt worn by Gutierrez when Suaste and Lowe picked him and Petitioner up as similar to exercise clothing Cobo kept in his vehicle.[21]

While Petitioner offered no evidence at the guilt-innocence phase of trial, Gutierrez attempted to present an alibi witness and accused Sean Lowe of being the person who actually shot Cobo. The jury found both Petitioner and Gutierrez guilty of capital murder on March 2, 1998.[22]

MR. BERCHELMANN: He would adopt the same argument. It would be prejudicial to Mr. Gutierrez. I believe there are some statements made by some other parties that implicate the other two defendants, but that do not implicate Gutierrez, so again we have the same problem.

16. *Id.* The Court ruled,

Upon the representation then by the State once again these oral statements would be—if offered only offered in regard to one individual and there would be no hearsay attributable to the other individual at trial. And we will have a hearing outside the presence of the jury before those statements are offered, and the witnesses will be instructed and admonished not to mention any other alleged participation. I will deny

the motion for severance between Mr. Arroyo and Mr. Gutierrez.

17. *Id.*, Vol. IV at 4–6.

18. *Id.*, Vol. XX at 35–45, 50, 53 (testimony of Jan Garavaglia).

19. *Id.*, Vol. XIX at 165–66 (testimony of Ronald Crumley) (comparing State's Exhibits Nos. 33 and 84 to State's Exhibit No. 93).

20. *Id.*, Vol. XX at 57–66 (testimony of Garron Foster).

21. *Id.* at 71–72 (testimony of Geraldo Ramirez).

22. *Id.* at 83–86; Trial Transcript at 75.

Petitioner moved for severance of the joint trial prior to the beginning of the punishment phase of trial, but was again denied. The prosecution's punishment phase witnesses testified regarding both Petitioner's and Gutierrez's violent past, including numerous incidents involving gun violence, robbery, and association with gangs. Both Petitioner's and Gutierrez's trial counsel presented testimony regarding each defendants' good reputation in the community and tragic details about their past. On March 6, 1998, the jury returned its verdicts at the punishment phase of trial and, based on the jury's answers to the capital sentencing special issues, the trial court sentenced both defendants to death.[23]

### D. Post-conviction Proceedings

Petitioner took direct appeal of his conviction and death sentence to the Texas Court of Criminal Appeals. Relevant to this proceeding, Petitioner presented seven grounds for relief on direct appeal, consisting of arguments that the trial court erred in denying Petitioner's motions for severance and thereby violated the principle announced in *Bruton v. United States*, the trial court erred in admitting Suaste's hearsay testimony regarding Gutierrez's statement that Petitioner had told Gutierrez to shoot Cobo, thereby violating Petitioner's rights under the Confrontation Clause, and the trial court erred in failing to give an anti-parties jury instruction at the punishment phase of trial. In an unpublished opinion issued May 9, 2001, the Texas Court of Criminal Appeals affirmed Petitioner's conviction and sentence. *Arroyo v. State*, Cause No. 73,117 (Tex.Crim. App. May 9, 2001) (unpublished). On October 9, 2001, the United States Supreme Court denied Petitioner's petition for writ of certiorari. *Arroyo v. Texas*, 534 U.S. 949, 122 S.Ct. 344, 151 L.Ed.2d 259 (2001).

On May 31, 2000, Petitioner filed an application for state habeas corpus relief. Petitioner's claims included that the prosecution violated the requirements of *Brady v. Maryland* by failing to disclose certain evidence to defense counsel, that Petitioner's trial and appellate counsel had rendered ineffective assistance of counsel, that Petitioner had not received a fair trial due to the composition of the jury, that the trial court had erred by instructing the jury on murder conspiracy and conspiracy in general, and that international treaties to which the United States is a party forbid the imposition of the death penalty upon a minor. The state habeas court held an evidentiary hearing March 27–29, 2001. On July 16, 2001, the state habeas trial court issued an Order recommending that Petitioner's state habeas application be denied.[24] In an unpublished, per curiam Order issued October 10, 2001, the Texas Court of Criminal Appeals adopted the state trial court's findings and conclusions and denied state habeas relief.[25]

Petitioner filed his federal habeas corpus petition (docket no. 28) on May 5, 2003, asserting twelve claims for relief. On August 22, 2003, Respondent filed an answer and motion for summary judgment (docket no. 33). On January 5, 2004, Petitioner filed his reply to Respondent's motion for summary judgment, which was amended March 2, 2004 with a number of pages that had originally been omitted.

### II. AEDPA Review

Because Petitioner filed his federal habeas corpus action after the effective date

---

**23.** *Id.*, Vol. XXVI at 57–60; Trial Transcript at 94–96.

**24.** State Habeas Transcript, Volume I–B at 190–261.

**25.** *Ex parte Randy Arroyo*, App. No. 49,846–01 (Tex.Crim.App. October 10, 2001).

of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court's review of Petitioner's claims for federal habeas corpus relief is governed by the AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001). Under the AEDPA standard of review, the Court may not grant Petitioner federal habeas corpus relief in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

■ A federal habeas court may grant relief under the "contrary to" clause if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or the state court decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Mitchell v. Esparza*, 540 U.S. 12, 15–16, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003).[26] As to the "unreasonable application" clause, a federal habeas court may grant relief if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case. *Wiggins*, 539 U.S. at 520, 123 S.Ct. 2527. When examining an unreasonable application, a federal court must determine whether the state court's application of clearly estab-

lished federal law was "objectively unreasonable." *Id.* at 520–21, 123 S.Ct. 2527. An "unreasonable" application is different from a merely incorrect one. *Id.* at 520, 123 S.Ct. 2527; *see also Price v. Vincent*, 538 U.S. 634, 641, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) ("[I]t is the habeas applicant's burden to show that the state court applied [a Supreme Court case] to the facts of his case in an objectively unreasonable manner."). Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Yarborough v. Alvarado*, 541 U.S. 652, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"). The AEDPA significantly restricts the scope of federal habeas review of state court factfindings, mandating deference to the state court's findings and requiring that a challenge to those findings be established by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Foster v. Johnson*, 293 F.3d 766, 776 (5th Cir.2002).

■ The AEDPA also requires that Petitioner have both exhausted and fairly presented his federal habeas claims in the state court. *Riley v. Cockrell*, 339 F.3d 308, 318 (5th Cir.2003). The exhaustion of all federal claims in state court is a fundamental prerequisite to requesting federal collateral relief under § 2254. *Wilder v.*

---

**26.** "[T]he state court need not even be aware of [Supreme Court] precedents; 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002)).

*Cockrell,* 274 F.3d 255, 259 (5th Cir.2001). A claim for federal relief must include reference to a specific constitutional guarantee, as well as a statement of facts that entitles Petitioner to relief; exhaustion is not satisfied by presenting the state courts only with the facts necessary to state a claim for relief. *Gray v. Netherland,* 518 U.S. 152, 162–63, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). To have fairly presented his federal claim, Petitioner must have reasonably alerted the state courts to the federal nature of his claim. *Wilder,* 274 F.3d at 260.

## III. Analysis

Petitioner puts forward twelve claims for federal habeas relief. A number of these claims are duplicative. Petitioner's claims can be grouped into seven categories: *Witherspoon v. Illinois* claim, Confrontation Clause claim; *Bruton v. United States* claim; erroneous jury charge claim; *Brady v. Maryland* claim; ineffective assistance of counsel claim, and claim under *Roper v. Simmons.*

### A. *Witherspoon v. Illinois* Claim As To Potential Juror Becker

In his fourth claim, Petitioner argues the state trial court erred when it excluded venire member Gerald Becker during voir dire based on Becker's religious opposition to the death penalty. Petitioner did not raise this complaint in his direct appeal. When Petitioner presented the state habeas court with his complaint regarding the trial court's exclusion of Becker, that court held Petitioner forfeited his complaint by failing to raise it on direct appeal. However, the state habeas court went on to hold the claim was without merit because Becker's voir dire testimony furnished the state trial court with substantial evidence supporting a conclusion that Becker's religious

beliefs substantially impaired his ability to serve as a juror in a capital murder trial.[27]

### 1. Procedural Default

■■■ The Texas Court of Criminal Appeals expressly adopted the state habeas trial court's findings and conclusions, including the conclusion that Petitioner procedurally defaulted on his claim under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), by failing to present it on direct appeal. Procedural default occurs where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, or (2) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred. *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In either instance, the petitioner is deemed to have forfeited his federal habeas claim. *O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Such procedural defaults only bar federal habeas review, however, when the state procedural rule that forms the basis for the procedural default was "firmly established and regularly followed" by the time it was applied to preclude state judicial review of the merits of a federal constitutional claim. *Ford v. Georgia,* 498 U.S. 411, 424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991).

■■■ Petitioner alleges no facts and fails to cite any Texas case law showing that the foregoing principle of state procedural default has been inconsistently followed by the Texas appellate courts in similar contexts. More specifically, Petitioner identifies no instances in which the Texas Court

---

**27.** State Habeas Transcript, Volume I–B at 234.

of Criminal Appeals has entertained the merits of a *Witherspoon* claim when raised for the first time in a state habeas corpus application. The Fifth Circuit has recognized that the same procedural default rule relied upon by Respondent in connection with the procedural default of Petitioner's claim was "firmly established" for federal procedural default purposes long before the date petitioner filed his brief on direct appeal. *Busby v. Dretke,* 359 F.3d 708, 719 (5th Cir.), *cert. denied,* 541 U.S. ——, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004) (holding the Texas Court of Criminal Appeals' opinion in *Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex.Crim.App.1996), *clarified on reh'g* (Feb. 4, 1998), "firmly entrenched" the procedural rule in question).

▆▆▆▆ The Supreme Court has recognized exceptions to the doctrine of procedural default where a federal habeas corpus petitioner can show "cause and actual prejudice" for his default or that failure to address the merits of his procedurally defaulted claim will work a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. To establish "cause," a petitioner must show either that some objective external factor impeded the defense counsel's ability to comply with the state's procedural rules or that the petitioner's trial counsel rendered ineffective assistance. *Id.* at 753, 111 S.Ct. 2546; *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (holding that proof of ineffective assistance by counsel satisfies the "cause" prong of the exception to the procedural default doctrine). While a showing of ineffective assistance can satisfy the "cause" prong of the "cause and actual prejudice" exception, Petitioner makes no allegation that his appellate counsel rendered ineffective assistance by failing to raise a point of error on direct appeal presenting his *Witherspoon* claim.

▆▆▆▆ In order to satisfy the "miscarriage of justice" test, Petitioner must supplement his constitutional claim with a colorable showing of factual innocence. *Sawyer v. Whitley,* 505 U.S. 333, 335–36, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). To satisfy the "factual innocence" standard, there must be a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the petitioner's guilt. *See Sawyer,* 505 U.S. at 335–40, 112 S.Ct. 2514 (holding that to show "actual innocence" in the context of a capital sentencing scheme, one must show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state statute and that "factual innocence" means a fair probability that, in light of all the evidence, the trier of the facts would have entertained a reasonable doubt as to the defendant's guilt). The "factual innocence" test, therefore, requires the Court to give consideration to the all of the evidence now available on the issue of the Petitioner's guilt or innocence. Petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Petitioner has alleged no specific facts satisfying this "factual innocence" standard. Because Petitioner has failed to satisfy the "actual innocence" test, he is not entitled to relief from his procedural defaults under the fundamental miscarriage of justice exception. Thus, Petitioner has procedurally defaulted on his *Witherspoon* claim.

2. *Petitioner's* Witherspoon *Claim Fails On The Merits*

▆▆▆▆ Even had Petitioner not defaulted on his *Witherspoon* claim, he would not be

entitled to relief. In *Witherspoon v. Illinois*, 391 U.S. 510, 521–23, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the Supreme Court held that prospective jurors may not be excused from sitting on a capital jury simply because they voiced general objections to the death penalty or expressed conscientious or religious beliefs against its infliction. Rather, the Supreme Court held,

> The most that can be demanded of a venireman in this regard is that he be willing to consider all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty regardless of the facts and circumstances that might emerge in the course of the proceedings.

*Id.* at 522 n. 21, 88 S.Ct. 1770.

In *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), the Supreme Court emphasized the limitations *Witherspoon* imposed on the ability of the State to exclude members of a venire panel from service on a petit capital jury and directly addressed jury selection in Texas capital murder trials.

> [A] juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. The State may insist, however, that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court.

*Id.* at 45, 100 S.Ct. 2521. "[T]he State may bar from jury service those whose beliefs about capital punishment would lead them to ignore the law or violate their oaths." *Id.* at 46–50, 100 S.Ct. 2521. In *Wainwright v. Witt*, the Supreme Court further clarified its holdings in *Witherspoon* and *Adams*, holding that the proper inquiry when faced with a venire member who expresses personal, conscientious, or religious views on capital punishment is "whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). In *Witt*, the Supreme Court also emphasized that considerable deference is to be given the trial court's first-hand evaluation of the potential juror's demeanor and that no particular word choice need necessarily be followed in interrogating the potential juror. *Id.* at 430–35, 105 S.Ct. 844. A violation of *Witherspoon* is not subject to harmless error analysis. *Gray v. Mississippi*, 481 U.S. 648, 668, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987).

Both parties have quoted extensively from the voir dire examination of Gerald Becker in their pleadings. Becker expressed both conscientious personal views regarding the death penalty and a responsibility to follow the law, even if that meant a contravention of his own personal views. In such a case, the Court must defer to the state trial judge's firsthand determination of a potential juror's bias based the potential juror's demeanor. *Witt*, 469 U.S. at 430–35, 105 S.Ct. 844. The state trial court found that Becker could not faithfully carry out his duties as a jury member. This factual determination of bias was a reasonable determination of the facts based on the evidence then before that court in the form of Becker's testimony and demeanor. *See Beazley v. Johnson*, 242 F.3d 248, 262 (5th Cir. 2001) (recognizing that a trial judge's finding of bias during voir dire is a determination of fact subject to a presumption of correctness on collateral review). Petitioner presented the state habeas court with no "clear and convincing" evidence establishing that the trial court's factual determination regarding Becker was erroneous. There is no "clear and convincing" evidence now before this Court establishing that the state trial court's determina-

tion was erroneous. The state habeas court's rejection on the merits of petitioner's *Witherspoon* claim was neither contrary to, nor or involved an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented in Petitioner's state habeas corpus proceeding. Petitioner's fourth claim is denied.

## B. Confrontation Clause Claim

■ In his first claim for federal habeas relief, Petitioner argues that the state trial court's admission, over timely objection, of Suaste's hearsay testimony regarding Gutierrez's statement that Petitioner shouted at Gutierrez to shoot Cobo violated Petitioner's rights under the Sixth Amendment's Confrontation Clause. As of May 9, 2001, the date the Texas Court of Criminal Appeals issued its opinion affirming Petitioner's conviction and sentence, the applicable federal constitutional standard for evaluating Confrontation Clause claims was that set forth in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).[28] Under *Roberts*, hearsay statements are sufficiently dependable to allow the untested admission of such statements against an accused when (1) "the evidence falls within a firmly rooted hearsay exception" or (2) it contains "particularized guarantees of trustworthi-

ness" such that adversarial testing would be expected to add little, if anything, to the statements' reliability. *Id.* at 66, 100 S.Ct. 2531. The latter inquiry requires examination of the totality of the circumstances in which the statement was made. *Idaho v. Wright*, 497 U.S. 805, 820, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). *Roberts* recognized that the underlying purpose of the Confrontation Clause is to augment the accuracy of the fact-finding process by ensuring the defendant an effective means to test adverse evidence. *Roberts*, 448 U.S. at 65, 100 S.Ct. 2531. Interpreting *Roberts*, the Supreme Court has held that custodial confessions by an accomplice do not fall within a firmly rooted hearsay exception and are presumptively unreliable because they seek to shift primary responsibility to the defendant and away from the declarant. *Lilly v. Virginia*, 527 U.S. 116, 134, 137–39, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999); *Lee v. Illinois*, 476 U.S. 530, 539–46, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). However, the Supreme Court has also held that co-conspirator statements made during the course and in furtherance of a conspiracy are reliable due to the long history of admission of such statements. *Bourjaily v. United States*, 483 U.S. 171, 182–84, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

■ Suaste and Lowe both testified extensively regarding Gutierrez's account

---

**28.** The Supreme Court's recent opinion in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), holding that the Confrontation Clause bars the admission of testimonial statements where the declarant is unavailable and the defendant was unable to cross-examine the declarant does not apply to Petitioner's claim. The Supreme Court made clear in *Crawford* that, as used in that opinion, the term "testimonial statements" applied to *ex parte* in-court testimony or its functional equivalent, such as affidavits, custodial examinations, depositions, and prior testimony that the defendant was unable to cross-examine. 124 S.Ct. at 1364. Gutier-

rez's declarations to Suaste and Lowe do not fall within this definition of "testimonial." In addition, the Supreme Court has not held that *Crawford* applies retroactively. In the Fifth Circuit, a new rule of criminal procedure is not retroactively available to a petitioner on collateral review unless it has been held retroactive by the Supreme Court itself. *Williams v. Cain*, 229 F.3d 468, 475 (5th Cir.2000). The question, therefore, is whether the state court decision was reasonable in light of "clearly established" federal law as of the date of that decision. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

of the kidnaping and fatal shooting of Cobo. The prosecution argued to the state trial court that Suaste's and Lowe's testimony fell within a state evidentiary hearsay exception for "adoptive admissions." [29] The prosecution's theory was that because Petitioner was present in the vehicle when Gutierrez gave Suaste and Lowe his account of Cobo's kidnaping and shooting, and because Petitioner voiced no objection or disagreement, Petitioner "adopted" Gutierrez's account as his own.[30] The United States Supreme Court has never recognized an adoption-by-silence exception to the hearsay rule for testimony such as Suaste's and Lowe's or held that any such exception was "firmly established" for Confrontation Clause purposes. In fact, a plurality of the Supreme Court has specifically rejected much of this rationale in holding that "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule." *Lilly*, 527 U.S. at 134, 119 S.Ct. 1887 (plurality opinion). Thus, the legal basis relied upon by the prosecution at trial for admitting the hearsay account of Gutierrez's hearsay statement as to Petitioner does not fall within any "firmly established" exception to the hearsay rule sufficient to withstand scrutiny under the Confrontation Clause.

 However, that the rationale of the prosecution or the state trial court is flawed is not the Court's concern when conducting a federal habeas review. A federal habeas court is to review only a state court's ultimate legal conclusion, and not the written opinion explaining the decision. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir.2002) (*en banc*), *cert. denied*, 537 U.S. 1104, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003). "[T]he only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Id.* In rejecting Petitioner's Confrontation Clause point of error on direct appeal and holding that Gutierrez's statements were admissible as "carr[ying] special guarantees of credibility and reliability," the Texas Court of Criminal Appeals relied principally on its own decision in *Dewberry v. State*, 4 S.W.3d 735 (Tex.Crim.App.1999). In *Dewberry*, the trial court admitted statements by three witnesses, all of whom testified as to statements made by Dewberry's co-defendant which inculpated Dewberry. The Texas Court of Criminal Appeals in *Dewberry* held that the statements were admissible as statements against the co-defendant's penal interest. *Id.* at 750. The Court held that the statement against penal interest exception was a firmly rooted exception to the hearsay rule. *Id.* at 753. The *Dewberry* Court also held that statements against penal interest, such as that of Dewberry's co-defendant, carry "special guarantees of credibility and reliability that are not replaceable by courtroom testimony." *Id.* (citing *White v. Illinois*, 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)[31] and distinguishing *Roberts*).[32] This Court

---

**29.** S.F. Trial, Vol. XVI at 174–78.

**30.** The state trial court accepted this theory despite testimony that Petitioner remained very quiet during Gutierrez's statements and appeared to be "in a daze." *Id.* at 163–69 (testimony of Suaste); *Id.*, Vol. XVII at 29–38 (testimony of Lowe).

**31.** *White* held that the exceptions to the hearsay rule for spontaneous declarations and statements made for purposes of medical di-

agnosis or treatment were both sufficiently "firmly established" to satisfy the Confrontation Clause's reliability requirement. *White v. Illinois*, 502 U.S. 346, 355–57, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (holding the hearsay statements of a four-year-old child abuse victim admissible under the spontaneous declaration and medical examinations exceptions to the hearsay rule).

**32.** No mention was made in *Dewberry* of the United States Supreme Court's decision in

is thus not relegated to examining whether Gutierrez's statements were properly admitted as an "adoptive admission" or as a statement against penal interest.[33] The Court must address Petitioner's federal habeas Confrontation Clause claim based on whether the state court's ultimate legal conclusion—that Gutierrez's non-custodial, contemporaneous and spontaneous hearsay statements to friends were admissible—was objectively reasonable.

▮▮▮▮▮ Whether or not the ultimate legal conclusion of the Texas Court of Criminal Appeals was contrary to or an unreasonable application of clearly established federal law,[34] Petitioner would not be entitled to relief because admission of testimony in violation of the Confrontation Clause is subject to harmless error review. *See Lilly*, 527 U.S. at 139–40, 119 S.Ct. 1887 (remanding the case to the state court to determine whether the Sixth Amendment error was harmless beyond a reasonable doubt); *Lee*, 476 U.S. at 547,

106 S.Ct. 2056. The test for harmless error in a federal habeas corpus action brought by a state prisoner is "whether the error had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). "The reviewing court must consider 'not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand.'" *United States v. Lage*, 183 F.3d 374, 388 (5th Cir.1999) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)); *see also O'Neal v. McAninch*, 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (holding that in conducting a harmless error analysis, the court should examine whether the error affected the jury's verdict). Thus, the inquiry is whether the prosecution can "show 'beyond a reasonable doubt that the error

*Lilly*, decided three months earlier. The plurality in *Lilly* concluded that the hearsay exception for statements against penal interest is not a firmly rooted exception when the statements inculpate an accomplice. *Lilly v. Virginia*, 527 U.S. 116, 134, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (opinion of Stevens, J.).

**33.** "Simply labeling a confession a 'declaration against penal interest' ... is insufficient for purposes of *Roberts*, as this exception 'defines too large a class for meaningful Confrontational Clause analysis.'" *Id.* at 145, 119 S.Ct. 1887 (Rehnquist, C.J., concurring in the judgment) (quoting *Lee v. Illinois*, 476 U.S. 530, 544 n. 5, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)).

**34.** "It is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when the statements are given under conditions that implicate the core concerns of the old *ex parte* affidavit practice—that is, when the government is involved in the statements' production, and when the

statements describe past events and have not been subjected to adversarial testing." *Id.* at 137, 119 S.Ct. 1887 (plurality opinion). The Court notes that Gutierrez's statements do not implicate the same "core concerns" as expressed by the plurality in *Lilly*. Gutierrez's statements were made to friends with little prodding, were made the same day as the events described, and were not made with any involvement on the part of the government. Where the declarant "had no apparent incentive at the time of the[] statements to risk implicating himself and no apparent reason to believe that his statements might result in leniency in any subsequent criminal prosecution," such statements "provide strong guarantees that [they] were trustworthy." *Ramirez v. Dretke*, 398 F.3d 691, 696 (5th Cir. 2005); *but see Guidry v. Dretke*, 397 F.3d 306, 329–30 (5th Cir.2005) (finding spontaneous statements to declarant's girlfriend in which he admitted to conspiring to murder with the petitioner, driving the petitioner to the scene of the murder, and picking petitioner up afterwards, amounted to a violation of the Confrontation Clause, and was not harmless error in view of all remaining evidence).

complained of did not contribute to the verdict obtained.'" *Sullivan v. Louisiana,* 508 U.S. at 279, 113 S.Ct. 2078 (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). As Respondent correctly points out, there was more than sufficient evidence for the jury to convict Petitioner of capital murder absent the testimony as to Gutierrez's statements. The evidence established that Petitioner planned the robbery of the red Mazda, directed Suaste to the apartment complex, carried a gun, voluntarily admitted his involvement in the crime to a police officer, and led the police officer to the discovery of evidence. Petitioner was therefore responsible for Gutierrez's actions under TEX. PENAL CODE § 7.02(a)(2) & (b) and the jury was charged as to this law.[35] The other evidence of Petitioner's extensive violent past presented at the penalty phase of trial was also sufficient to warrant a death penalty, absent the statements of Gutierrez. That the State emphasized to the jury[36] Petitioner's apparent direction to Gutierrez to "[s]hoot him" is not sufficient, on its own, to establish a

substantial and injurious effect or influence on the jury's verdict given the weight of the other evidence against Petitioner. Admission of Gutierrez's statements through Suaste and Lowe was therefore harmless, even if it was error. Petitioner's first claim for federal habeas relief is denied.

## C. *Bruton v. United States* Claim

 In his second claim for federal habeas relief, Petitioner argues that his rights under the Confrontation Clause were also violated by the state trial court's denials of his repeated motions for severance of his and Gutierrez's trials.[37] Although Petitioner raised this same argument as a point of error on direct appeal, the Texas Court of Criminal Appeals rejected this claim in the context of its analysis of his other Confrontation Clause claim, without a separate analysis of the issue under applicable federal law. Where an out-of-court statement by a non-testifying co-defendant is admitted, the defendant inculpated by the statement is denied the opportunity to cross-examine his co-defen-

---

**35.** (a) A person is criminally responsible for an offense committed by the conduct of another if:

 ... (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense;

 ...

 (b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. TEX. PENAL CODE § 7.02.

**36.** A consideration relevant to the harmless error analysis "is the degree of importance placed on [the] out-of-court statement by the prosecutor in its presentation and argument

of the case to the jury. The emphasis, or lack thereof, placed on the [inadmissible] statement by the prosecutor can affect the perception of that statement by the jurors." *United States v. Walker,* 148 F.3d 518, 527 (5th Cir. 1998) (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

**37.** Petitioner "fairly presented" this claim to the Texas Court of Criminal Appeals as his third point of error on direct appeal and obtained a ruling from that court on the merits. It is well-settled that a petitioner need not attempt to re-litigate a claim that was resolved on the merits on direct appeal in a subsequent state habeas corpus proceeding to satisfy the "fair presentation" requirement of the exhaustion doctrine. *See Shute v. State of Texas,* 117 F.3d 233, 237 (5th Cir.1997). Respondent is incorrect in his contention that Petitioner procedurally defaulted on his *Bruton* claim by failing to re-urge it in his state habeas application.

dant, and is thus denied his constitutional right to confront the witnesses against him. *Bruton v. United States,* 391 U.S. 123, 127, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (citing *Douglas v. State of Alabama,* 380 U.S. 415, 419, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)). In *Bruton,* the Supreme Court held the admission at a joint trial of a non-testifying co-defendant's oral confession which inculpated the defendant violated the defendant's right to a fair trial under the Confrontation Clause.

> Not only are the incriminations [of a co-defendants confession] devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.

*Id.* at 135–36, 88 S.Ct. 1620. The Supreme Court has applied its holding in *Bruton* to prohibit introduction during a joint trial of a non-testifying co-defendant's confession where, although the defendant's name was deleted, the confession contained other information from which the jury could readily infer the identify of the defendant whose name was deleted. *Gray v. Maryland,* 523 U.S. 185, 192–97, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). However, the Supreme Court has held admissible a non-testifying co-defendant's confession where, accompanied by a proper limiting instruction, the confession was redacted to eliminate any reference to the defendant's existence. *Richardson v. Marsh,* 481 U.S.

200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (holding that *Bruton* applies only to out-of-court statements that are "facially incriminating" and that directly implicate the defendant).

The state trial court recognized the potential problems inherent with a joint trial during pretrial hearings but, as noted above, was repeatedly advised by the prosecution that any statements by either co-defendant admitted at trial would be redacted to eliminate any reference to the other defendant. Nonetheless, when the prosecution offered Suaste's testimony as to Gutierrez's statements against Petitioner, the state trial court, after hearing argument, admitted it. Apparently, the Texas Court of Criminal Appeals affirmed the state trial court because, at the time it initially denied Petitioner's motion for severance, the prosecution had not yet presented Suaste's testimony to the trial court.[38] Petitioner argues that there is no clearly established federal law that permits the prosecution to conceal from the state trial court its intention to offer a non-testifying co-defendant's hearsay statements against another co-defendant in joint trial.

 As with Petitioner's substantive Confrontation Clause claim regarding Gutierrez's statements themselves, Petitioner's *Bruton* claim is subject to harmless error review. *Lage,* 183 F.3d at 388. "The courts have found *Bruton* error harmless where the erroneously admitted evidence is 'merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury.'" *Id.* (quoting *Brown v. United States,* 411 U.S. 223, 231, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973)). While it may have been constitutional error to permit joint prosecution of Gutierrez and Petitioner when Gutierrez's hear-

---

**38.** "Furthermore, the admission of [Gutierrez's] statement provided the trial court with no additional evidence in support of [Petition-er's] motion to sever." *Arroyo v. State,* No. 73,117, at 11 (Tex.Crim.App. May 9, 2001) (per curiam).

say statements inculpating Petitioner were admitted and permitted to be used against Petitioner, the Court finds that any such error was harmless. *See United States v. Wilson*, 116 F.3d 1066, 1083 (5th Cir.), *vacated on other grounds*, 123 F.3d 213 (5th Cir.1997) (holding admission of a non-custodial, spontaneous statement to an undercover police officer that specifically implicated a co-defendant was a violation of *Bruton*, but was harmless because it was cumulative of other independent evidence of guilt). As noted above, there was more than sufficient evidence to justify a conviction as to Petitioner of capital murder without the testimony regarding Gutierrez's statements. This testimony was merely cumulative of other evidence properly admitted against Petitioner. The fact that the prosecution initially informed the trial court that it did not intend to offer the statements against Petitioner does not change the analysis. A hearing was held as to the admissibility of the statement and the motion for severance was re-urged after the trial court found the statements admissible against Petitioner. Nor does the fact that the prosecution emphasized Gutierrez's statements to the jury when discussing Petitioner. These statements were merely cumulative of other evidence establishing Petitioner's guilt. Any error in the failure to sever the prosecutions of Gutierrez and Petitioner was harmless and Petitioner's second claim is therefore denied.

### D. Erroneous Jury Charge Claims

In his sixth through ninth claims, Petitioner argues that (1) the state trial court erroneously included an instruction on the Texas law applicable to the criminal liability for accomplices and coconspirators in Petitioner's guilt-innocence phase jury instructions (which erroneously lessened the prosecution's burden of proof regarding the intentional nature of capital murder); (2) his trial counsel rendered ineffective assistance by failing to object to the erroneous jury charge; and (3) his appellate counsel rendered ineffective assistance by failing to raise a point of error on direct appeal arguing that submission of the allegedly erroneous jury charge constituted fundamental error, respectively. Petitioner raised these same claims in his state habeas corpus application. The state habeas trial court concluded there was no error under applicable Texas law in the trial court's submission of the guilt-innocence phase jury instructions relating to the criminal responsibility of conspirators even though the indictment did not charge Petitioner with engaging in a criminal conspiracy.[39] Having rejected the merits of Petitioner's complaints regarding the guilt-innocence phase jury charge, the state habeas trial court concluded Petitioner's related assertions of ineffective assistance by his trial and appellate counsel were unsubstantiated.[40]

#### 1. Guilt–Innocence Phase Jury Instruction

 At the guilt-innocence phase of his capital murder trial, the state trial court accurately instructed Petitioner's jury that Texas law provides that a criminal defendant may be convicted as a principal for either aiding and abetting, TEX. PENAL CODE § 7.02(a), or conspiracy, *id.* § 7.02(b).[41] The jury instructions accu-

---

**39.** State Habeas Transcript, Vol. I–B at 240–43.

**40.** *Id.* at 243–44.

**41.**

IV.

Our law provides a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, or by the conduct of another for which he is criminally responsible, or by both. Each party to an offense may be charged with commission of the offense.

rately reflected applicable Texas law at the time of Petitioner's offense. *See Montoya v. Scott,* 65 F.3d 405, 415 (5th Cir.1995) (discussing the status of the Texas law of parties at the time of Petitioner's offense and holding that § 7.02(a)(2) and § 7.02(b) authorized Texas juries to convict persons for capital murder even when those persons were mere accomplices to the murder and had not personally participated in the acts which caused the death). It is well-settled that the Texas "law of parties" may support a conviction for capital murder. *See, e.g., Green v. Johnson,* 160 F.3d 1029, 1036 & n. 5 (5th Cir.1998); *Montoya v. Scott,* 65 F.3d at 415; *Mann v. Scott,* 41 F.3d 968, 977 (5th Cir.1994) (noting that under Texas law, an intentional murder committed "in the course of committing or attempting to commit" a predicate felony is capital murder if the murder occurs during an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the underlying predicate felony). At all times pertinent to Petitioner's offense, the Texas criminal conspiracy statute provided that *all* participants in a criminal conspiracy were guilty of every felony actually committed in the furtherance of the conspiracy provided commission of the felony should have been anticipated as a result of carrying out of the conspiracy, regardless of whether the participant in the conspiracy

intended to commit each such foreseeable felony. *Montoya v. Scott,* 65 F.3d at 415. Thus, under Texas law, a participant in a criminal conspiracy, such as Petitioner, could be held criminally responsible for a felony, such as capital murder, committed by a co-conspirator in the furtherance of their joint conspiracy even if he lacked the specific intent to commit any offense other than the ultimate object of the criminal conspiracy if the felony was one he should have anticipated would occur in the course of carrying out the conspiracy.

Texas law has long authorized conviction of a capital defendant under the law of parties even when the defendant was indicted solely as a principal. *See Rabbani v. State,* 847 S.W.2d 555, 558 (Tex.Crim. App.1992) (holding proof beyond a reasonable doubt that the defendant actually fired the fatal shot unnecessary for a capital murder conviction where the jury is charged on the law of parties); *Montoya v. State,* 810 S.W.2d 160, 165 (Tex.Crim.App. 1989). Additionally, the Texas law of parties will support a conviction for capital murder even if the indictment did not charge the defendant under the law of parties. *See Jacobs v. Scott,* 31 F.3d 1319, 1329 (5th Cir.1994) (holding no error arises from one indicted as a principal being convicted of capital murder based upon a showing that he aided and abetted in the commission of the murder or participated

---

Mere presence alone will not make a person a party to an offense. A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense.

V.

If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, then all conspirators are guilty of the felony actually committed, though having no intent

to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. Capital murder and robbery are felonies.

By the term "conspiracy", as used in these instructions, means an agreement between two or more persons, with intent that a felony be committed, that they, or one or more of them, engage in conduct that would constitute the offense. An agreement constituting a conspiracy may be inferred from acts of the parties.

Trial transcript at 60.

in a conspiracy). The Fifth Circuit has also held the United States Constitution does not prohibit a state from convicting a defendant for capital murder under a conspiracy theory when the defendant was not charged with conspiracy to commit murder. *Montoya v. Scott,* 65 F.3d at 415 (holding that one who has been indicted as a principal may be convicted on evidence showing he aided and abetted the commission of the offense).

██ Petitioner was charged with capital murder and convicted of that offense. No Supreme Court case mandates the rule Petitioner advocates. In short, there is no "clearly established" federal legal principle, established by Supreme Court opinion, prohibiting a criminal conviction for capital murder when the defendant, indicted for capital murder, was shown to have either aided and abetted another who actually committed the capital murder, or participated in a conspiracy with the person who actually committed the capital murder where that murder was both a foreseeable

outcome of the conspiracy.[42] Petitioner's sixth and seventh claims are denied.

### 2. Ineffective Assistance

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of trial counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The same standard applies to complaints about the performance of counsel on appeal. *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). To prevail, a defendant must show by a preponderance of the evidence that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense to such an extent confidence in the outcome is undermined. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696, 104

---

**42.** Further, adoption of the rule advocated by Petitioner in his sixth and seventh claims would be precluded under the non-retroactivity principle announced by the Supreme Court in *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Under that holding, federal courts are generally barred from applying new constitutional rules of criminal procedure retroactively on collateral review. *Caspari v. Bohlen,* 510 U.S. 383, 389–90, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). A "new rule" for *Teague* purposes is one which was not dictated by precedent existing at the time the defendant's conviction became final. *See O'Dell v. Netherland,* 521 U.S. 151, 156, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (holding that a "new rule" either "breaks new ground," "imposes a new obligation on the States or the Federal Government," or was not "dictated by precedent existing at the time the defendant's conviction became final"). Under this doctrine, unless reasonable jurists hearing the defendant's claim at the time his conviction became final

would have felt compelled by existing precedent to rule in his favor, a federal habeas court is barred from doing so on collateral review. *Id.*

The only two exceptions to the *Teague* non-retroactivity doctrine are reserved for (1) new rules forbidding criminal punishment of certain primary conduct and rules prohibiting a certain category of punishment for a class of defendants because of their status or offense and (2) "watershed" rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. *O'Dell,* 521 U.S. at 157, 117 S.Ct. 1969. Petitioner's conviction became final for *Teague* purposes on October 9, 2001, when the United States Supreme Court denied certiorari in connection with Petitioner's direct appeal. *See Caspari,* 510 U.S. at 390, 114 S.Ct. 948. The new rule advocated by Petitioner in his sixth and seventh claims for relief falls within neither of the two recognized exceptions to the *Teague* doctrine.

S.Ct. 2052. The *Strickland* test may be addressed in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n. 14, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

To establish that counsel's performance was deficient, Petitioner "must show that counsel's performance fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. This requires a showing that the errors made were so serious that counsel was not functioning as provided by the Sixth Amendment. *Id.* To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance," *id.* at 689, 104 S.Ct. 2052, and the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions, *id.* at 691, 104 S.Ct. 2052. The Court should be extremely deferential in scrutinizing the performance of counsel and focus on the prevailing professional norms. *Wiggins*, 539 U.S. at 523, 123 S.Ct. 2527. An attorney's strategic choices, usually based on information supplied by the defendant and from a thorough investigation of relevant facts and law, are virtually unchallengeable. *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir.1998); *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir.1997) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.").

To establish prejudice, Petitioner must show that there is a reasonable probability, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. It is not enough for Petitioner to show that the result would have been different had his attorney taken a different action. He must also show that the result of the proceeding was fundamentally unreliable or unfair. *Williams v. Taylor*, 529 U.S. at 393 n. 17, 120 S.Ct. 1495; *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The Court must consider the totality of the evidence before the finder of fact in assessing whether result would likely have been different absent the alleged errors of Petitioner's attorneys. *Strickland*, 466 U.S. at 695–96, 104 S.Ct. 2052. Mere speculation and conjecture are insufficient to satisfy the prejudice prong. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir.1992). Likewise, conclusory allegations are insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir.1990).

As explained above, Petitioner's complaints of alleged fundamental error in the trial court's guilt-innocence phase jury instructions are without basis. Therefore, there was nothing objectively unreasonable about the failure of his trial counsel to raise the objection in question. *See Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir.1995) (holding counsel cannot be deficient for failing to press a frivolous point). Likewise, because Petitioner's complaints about his guilt-innocence phase jury instructions possess no arguable merit, Petitioner was not prejudiced by his trial counsel's failure to make such futile objections. *See Neal v. Cain*, 141 F.3d 207, 214–15 (5th Cir.1998) (holding that a petitioner's complaints regarding his counsel's failure to raise specific defenses did not satisfy prejudice prong of *Strickland* where the proposed defenses were without merit). For the same reasons the failure of Petitioner's appellate counsel to raise these points of error on direct appeal did not cause the performance of counsel to fall

below an objective level of reasonableness and did not prejudice Petitioner within the meaning of *Strickland.* Petitioner's eighth and ninth claims are denied.

### E. *Brady v. Maryland* and Other Ineffective Assistance Claims

In his third and fifth claims Petitioner argues that the prosecution withheld impeachment and mitigating evidence from his trial counsel in the form of evidence showing that prosecution witness Gracie Hernandez had an extensive criminal record, as well as the "victim impact statement" of Cobo's 15–year–old daughter given to prosecutors in Christopher Suaste's case, in which she indicated that she believed the death penalty might not be the appropriate punishment for those responsible for her father's death. In his tenth claim, Petitioner argues that his trial counsel rendered ineffective assistance during the punishment phase of Petitioner's trial by failing to (1) adequately investigate available mitigating evidence, specifically Petitioner's deprived childhood and history of abuse at the hands of an alcoholic father; (2) present available mitigating evidence, in the form of the testimony of Petitioner's brother Romulo, Petitioner's sister Marangeli Vargas, and Petitioner's neighbor Mary Helen Zaragosa; and (3) adequately prepare Petitioner's punishment phase witnesses, specifically Nancy and Tim Draves and Phyllis Beal, to face the prosecution's cross-examination regarding Petitioner's long history of violent conduct. And in his twelfth claim, Petitioner argues that his trial counsel and state appellate counsel rendered ineffective assistance by failing to object to the imposition of a death sentence on him based on the fact that Petitioner was only 17 at the time of his offense and failing to present the argument as a point of error on direct appeal.

#### 1. *Procedural Default*

Respondent correctly points out that, insofar as Petitioner complains in this Court about his trial counsel's failure to call either Petitioner's brother or sister to testify at the punishment phase of trial, those aspects of Petitioner's tenth claim have not been "fairly presented" to the state courts and, therefore, Petitioner has procedurally defaulted on that aspect of his claim. *See Coleman,* 501 U.S. at 735 n. 1, 111 S.Ct. 2546. In order to exhaust available state remedies, a petitioner must fairly present all of his claims to the state courts. *Duncan v. Henry,* 513 U.S. 364, 115 S.Ct. 887, 130 L.Ed.2d 865, (1995). The exhaustion requirement is not met if the petitioner presents new legal theories or factual claims in his federal habeas petition. *Anderson v. Harless,* 459 U.S. 4, 6–7, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). It is well-settled that a federal habeas corpus petitioner asserting a claim of ineffective assistance who presents the federal habeas court with material factual allegations in support of that claim which he has not "fairly presented" to the state courts has failed to exhaust available state remedies on that claim. *See, e.g., Dispensa v. Lynaugh,* 847 F.2d 211, 217 (5th Cir.1988) (holding that a claim is not exhausted where a federal habeas petitioner presents the same legal claim to a federal court that he presented in state court but supports that claim with new factual allegations that he did not make in the state courts). Thus, Petitioner procedurally defaulted on that aspect of his tenth claim that complains of his trial counsel's failure to call his brother and sister to testify at the punishment phase of trial.

Petitioner also failed to fairly present the state habeas court with his complaint that his state *appellate* counsel rendered ineffective assistance by failing to assert a point of error on direct appeal

premised on the fact the Petitioner was only 17 years old on the date of his capital offense and the argument that the Eighth Amendment and various international treaties bar the execution of minor capital murderers. There is no mention of any such complaint in Petitioner's state habeas corpus pleadings. Therefore, Petitioner has also procedurally defaulted on this unexhausted portion of his twelfth claim.

### 2. Remaining Claims Mooted by Roper v. Simmons

██ On March 1, 2005, the Supreme Court declared that the Eighth Amendment proscribes the execution of persons who commit capital murder before they have reached age eighteen. *Roper v. Simmons*, 543 U.S. ——, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). The State of Texas maintains an official website (*www.tdcj.state.tx.us/stat/offendersondrow.htm*) on which the Texas Department of Criminal Justice represents that Petitioner (erroneously listed as "Arroya") was born on October 31, 1979 and committed his capital offense on March 11, 1997. Thus, the State of Texas has publically represented that Petitioner was less than eighteen years of age on the date he committed his capital offense. Under the Supreme Court's holding in *Roper*, the State of Texas may not execute Petitioner for his part in the kidnaping and murder of Cobo.

Assuming that this Court were to grant Petitioner relief on any of his claims as to *Brady* violations,[43] or as to his non-defaulted claims of ineffective assistance by trial counsel (which would be unlikely), the only relief to which such a determination would entitle Petitioner would be the granting of

a new trial on the issue of punishment, under TEX.CODE CRIM. PROC. Art. 44.29(c). Pursuant to *Roper*, the State of Texas is no longer permitted to impose the death penalty on Petitioner for his involvement in Cobo's murder. Therefore, Petitioner's third, fifth, tenth, and twelfth claims for federal relief have been effectively rendered moot. *See AT&T Communications of Southwest v. City of Austin*, 235 F.3d 241, 243 (5th Cir.2000) (stating that a case is moot if the issues presented are no longer live); *Piggly Wiggly Clarksville v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir.1999) ("A claim becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."). Therefore, the Court denies Petitioner's third and fifth claims in their entirety, as well as the exhausted aspects of Petitioner's tenth and twelfth claims, as moot.

### F. Substantive *Roper v. Simmons* Claim

██ In his eleventh claim for relief, Petitioner argues that both the Eighth Amendment, the International Covenant on Civil and Political Rights, and other international treaties to which the United States is a party preclude the State of Texas from executing him because, on the date of Cobo's murder, Petitioner was less than eighteen years of age. As noted above, the Supreme Court recently ruled in favor of the substance of Petitioner's claim. *Roper*, 125 S.Ct. at 1198 ("The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought

---

**43.** The allegedly withheld evidence relates exclusively to the punishment phase of Petitioner's trial. Gracie Hernandez's testimony served primarily to corroborate the testimony of a law enforcement officer (Rudy Zarote) regarding Petitioner's history of violent conduct at Petitioner's residence. The "victim

impact statement" executed by Reena Cobo in connection with Christopher Suaste's case stated, "I want to see the murderers punished not necessarily by death" and dealt solely with the mitigation special issue. S.F. State Habeas Proceeding, Vol. 6.

to rest."). The AEDPA precludes. this Court, however, from granting federal habeas corpus relief unless the state court ruling under collateral attack was either contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *Wiggins*, 539 U.S. at 520, 123 S.Ct. 2527. Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Yarborough v. Alvarado,* 541 U.S. 652, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004). However, a decision of the Supreme Court that results in a "new rule" applies to convictions that have already become final in certain "limited circumstances." *Schriro v. Summerlin*, 542 U.S. ——, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004). "New *substantive* rules generally apply retroactively." *Id.; United States v. Gonzales*, 327 F.3d 416, 417 (5th Cir.2003). "Substantive rules" under the Supreme Court's jurisprudence include "decisions that narrow the scope of a criminal statute by interpreting its terms, *see Bousley v. United States*, 523 U.S. 614, 620–21, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, *see Saffle v. Parks*, 494 U.S. 484, 494–95, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *Teag-*

*ue v. Lane*, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion)." *Id.* In other words, a rule is substantive rather than procedural "if it alters the range of conduct or the class of persons that the law punishes." *Id.* at 2523 (citing *Bousley*, 523 U.S. at 620–21, 118 S.Ct. 1604).

■ The rule announced in *Roper*— that a person cannot be sentenced to death for a crime committed before the age of eighteen—is clearly a substantive, rather than procedural, rule. It alters the class of persons eligible for the death penalty. Accordingly, *Roper* applies retroactively to all cases involving offenders under the age of eighteen at the time of the offense, including those cases on collateral review. *See Roper*, 125 S.Ct. at 1198 ("In holding that the death penalty cannot be imposed upon juvenile offenders, we ... [hold] that *Stanford* [*v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989) ] should no longer control in those few *pending* cases or in those yet to arise.") (emphasis added).

The Texas Court of Criminal Appeals rejected petitioner's Eighth Amendment and international treaty challenges to his death sentence on October 10, 2001, in the course of Petitioner's state habeas corpus proceeding.[44] While the Texas Court of Criminal Appeals' ruling may have been correct at the time, given clearly established federal law as of that date, *see Stanford v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989), the fact that *Roper* applies retroactively to cases on collateral review means that the state court's ruling was clearly contrary to clearly established federal law, as determined by the Supreme Court.[45] Petition-

---

44. *Ex parte Randy Arroyo*, App. No. 49,846–01 (Tex.Crim.App. October 10, 2001).

45. Cf. *Bell v. Cockrell*, 310 F.3d 330, 332 (5th Cir.2002) (holding *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002),

which forbid the execution of the mentally retarded, applies retroactively to cases on collateral review); *Santana–Madera v. United States*, 260 F.3d. 133, 139 (2nd Cir.2001) (holding that *Richardson v. United States*, 526

er's claim presents the type of "exceptional circumstances where the need for the remedy afforded" by collateral relief is apparent. *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (quotations omitted). Accordingly, Petitioner's eleventh federal habeas claim, that his death sentence is unconstitutional because of his age at the time of the murder, is meritorious.

## IV. Certificate of Appealability

Before a petitioner may appeal the denial of a habeas corpus petition filed under § 2254, the petitioner must obtain a "Certificate of Appealability" ("CoA"). 28 U.S.C § 2253(c)(2); *Miller–El v. Cockrell,* 537 U.S. 322, 335–36, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Under the AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *Crutcher v. Cockrell,* 301 F.3d 656, 658 n. 10 (5th Cir.2002). A CoA will not be granted unless the petitioner makes a substantial showing of the denial of a constitutional right. *Miller–El,* 537 U.S. at 336, 123 S.Ct. 1029. The petitioner must demonstrate that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Id.* The propriety of granting a CoA may be addressed *sua sponte. Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim. If the Court rejects a petitioner's constitutional claim on the merits, the petitioner must demonstrate that reasonable jurists could find the court's assessment of the constitutional claim to be debatable or wrong. *Miller– El,* 537 U.S. at 338, 123 S.Ct. 1029. In a

case in which the petitioner wishes to challenge on appeal the Court's dismissal of a claim for a reason not of constitutional dimension—such as procedural default, limitations, or lack of exhaustion—the petitioner must show that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* whether the Court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 483, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

Viewed in proper context, there is no basis for disagreement among jurists of reason with regard to this Court's disposition of any of Petitioner's third through twelfth claims. The state courts' adjudications of those claims were the products of reasonable applications of clearly established federal law and many of Petitioner's claims have now become moot. However, this Court's holding that the introduction of Gutierrez's statements, through the testimony of Suaste and Lowe, against Petitioner, and the failure to sever the trials of Gutierrez and Petitioner amounted to no more than harmless error under the Confrontation Clause, raises important issues likely to stir disagreement among jurists of reason and worthy of further consideration. Accordingly, Petitioner is entitled to a CoA with regard to the Court's denial of his first and second claims addressing the Confrontation Clause issues.

## V. Conclusion

Petitioner seeks review of his conviction and death sentence in the murder of United States Air Force Captain Jose Cobo. Petitioner raises twelve grounds for federal habeas relief, alleging violations of the Confrontation Clause of the Sixth Amendment, violations of *Brady v. Maryland* and *Witherspoon v. Illinois,* improper jury in-

U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), announced a new substantive rule of

law and therefore should be applied retroactively in habeas proceedings).

structions, and complaints of ineffective assistance of counsel. In addition, Petitioner argues that his death sentence is unconstitutional under the Eighth Amendment because he was under eighteen years of age at the time of the murder. The Court DENIES all relief requested in Petitioner's first through tenth and twelfth claims contained in his pleadings (docket nos. 26, 38, & 40). Petitioner is DENIED a Certificate of Appealability on his third through tenth and twelfth claims and GRANTED a Certificate of Appealability on his first and second claims. Petitioner's eleventh claim, that his death sentence is a violation of the Eighth Amendment because he was less than eighteen years of age at the time of the murder, is CONDITIONALLY GRANTED, as the Court finds that the United States Supreme Court case of *Roper v. Simmons* announced a new substantive rule that applies retroactively to cases on collateral review. The Court will issue a Writ of Habeas Corpus unless, within ninety days from the date the Judgment in this cause becomes final, the State of Texas grants Petitioner a new sentencing hearing, as permitted by TEX.CODE CRIM. PROC. Art. 44.29(c), or vacates Petitioner's death sentence and imposes a sentence less than death. *Moore v. Johnson,* 194 F.3d 586, 622 (5th Cir.1999). All other pending motions are DISMISSED as moot.